A. J. BYNUM v. J. F. MILLER & CO.

*Mortgage—Evidence—Agency.*

1. Evidence as to whether the mortgage debt has been paid is immaterial, in an action by the mortgagee against the vendee of the mortgagor, for the conversion of the personal property conveyed in the deed.

2. A mortgagor conveys a stock of goods on hand and any other goods he may buy to replenish the stock, with power of sale if the debt is not paid by a certain time; *Held*, that by accepting the deed, the mortgagee assented to its provisions—to the mortgagor's continuing the business with the right to sell and replenish the stock, and constituting him an agent for that purpose.

CIVIL ACTION tried at Spring Term, 1883, of CLEAVE-LAND Superior Court, before *Shipp, J.*

This action was brought to recover a stock of goods or damages for the conversion of the same.

The plaintiff proved a demand and refusal, and the conversion was admitted; and he claimed the goods under two chattel mortgages, executed by W. H. Miller, duly registered in Cleaveland county.

The plaintiff testified that under the mortgages the debts of Bynum & Miller had not been paid by the mortgagor, according to the provisions of said mortgages, though he had paid some of the debts. The plaintiff was then asked how much of the indebtedness secured by the mortgage had been paid, and, on objection by defendants, the question was ruled out as being immaterial.

The defendants claimed the goods under an alleged purchase from W. H. Miller, the mortgagor, in the spring of 18..., after the execution and registration of plaintiff's mortgages.

On the question of ownership, there was evidence tending to show that plaintiff, after and at the time of executing the mortgages, gave Miller authority to sell the goods as plaintiff's agent, but the plaintiff denied that any such authority was given, and gave evidence tending to support said denial.

By request of the defendants, the court charged the jury, that

if the plaintiff gave to Miller the authority contended for by the defendant, to-wit: to sell the goods for him, he had the right to sell the goods, either by retail or in bulk, and the plaintiff could not recover.

His Honor also charged the jury, "that he had carefully examined the plaintiff's mortgages, and could find no authority given in them for W. H. Miller to sell the goods as plaintiff's agent." The defendants excepted to this construction of the mortgages.

The first mortgage, of date 20th April, 1878, conveyed all of the mortgagor's stock of goods, or general merchandise, in the storehouse lately occupied by Bynum & Miller; also any goods that he might buy before December 1st, 1878; but if he should fail to pay the debt by that time, then the mortgagee might sell, &c.

The second mortgage, dated April 27th, 1878, contained the following: "All my right, title and interest in the stock of goods of Bynum & Miller, in the house known as the 'John L. Moore stand,' and occupied by Bynum & Miller, and whatever goods may be bought by me from time to time to replenish said stock, consisting of dry goods, groceries, notions, hardware, crockery, furniture, &c., to have and to hold the same," with condition to be void, and with power of sale if the debts secured were not paid by the 15th of November, 1878.

On the question of damages, there was evidence tending to show that at the time of the conversion there was on hand, of the stock of goods originally conveyed, from two to seven hundred dollars' worth, and that the whole stock at said time was worth from $2,000 to $2,500, the increased value being additions to the stock made by W. H. Miller, the mortgagor, after the execution of the mortgages in the usual course of his business, and before the alleged purchase by the defendants.

The court, on this point, charged the jury that plaintiff could recover, if at all, the value of the whole stock at the time of the conversion, including both that portion of the stock originally

conveyed and the portion subsequently purchased by the mortgagor. The defendants excepted; and the jury found a verdict for the plaintiff for $1,300. There was judgment according to the verdict, and the defendants appealed.

*Messrs. Hoke & Hoke,* for plaintiff.
*Messrs. Reade, Busbee & Busbee,* for defendants.

ASHE, J. The first exception taken to the ruling of His Honor in excluding the evidence as to the amount of the debts paid by the defendant, as His Honor held, was immaterial, and cannot be sustained.

But we think His Honor committed an error in the construction of the mortgages upon the point of agency.

The mortgagor in the deed of April 27th, 1878, conveyed all his right, title and interest in the stock of goods and any of the goods that may be bought by him, from time to time, to replenish the stock, &c. The plaintiff by accepting the deed assented to this provision. The plaintiff then assented to the mortgagor's continuing the business, with the right to *replenish* the stock until the 15th November, 1878.

The right to replenish necessarily involved the right to sell. Replenish from the Latin words *re* "again," and *plenus* "full," means literally to fill again, to fill up. Nothing can be filled up that is already full. If the goods were to remain in the hands of the mortgagor, to be kept *in statu quo* until the 15th of November, there would be nothing to replenish. To replenish a thing necessarily implies exhaustion, reduction or diminution in the quantity of the commodity. There could have been no other mode of reduction in the quantity of these goods in the contemplation of the parties other than by a sale.

In common acceptation, when a merchant speaks of replenishing his stock of goods, it is understood that he means to fill up his stock that has been reduced by sales.

The consent then given by plaintiff to defendant to replenish the stock from time to time, gave him the right to sell, and con-

stituted him his agent for that purpose; and especially is this to be so considered, when the deed provides that the entire stock on hand on the 15th of November, including not only the original stock, but the stock as increased by new purchases, should belong to the mortgagee.

While our conclusion is there was error in the instruction given by His Honor to the jury upon the question of agency, we do not decide the question as to the extent of the agent's authority; but as there was error, we do not know but that the misdirection of His Honor may have affected the cause of the defendants.

This opinion must therefore be certified to the superior court of Cleaveland county, that a *venire de novo* may be awarded.

Error. *Venire de novo.*