This is a suit brought by the plaintiff to recover the freight charges on seven cars of cotton seed shipped from Raleigh, N.C. in interstate commerce, in the name of W. A. Simpkins Company, three cars being shipped 18 October, 1912, to W. A. Simpkins Company, order notify J. P. Savant, New Orleans, La., and three cars being shipped 31 October, to the same order, notify, and the same consignee, and one car being shipped 24 October by W. A. Simpkins Company to itself, order notify Frierson Company, Limited, Frierson, La. The complaint sets forth three causes of action: (1) being that W. B. Drake, Jr., cashier, by virtue of a chattel mortgage not yet due, as mortgagee, consenting, was liable for the shipping out and the turning into money by the mortgagor; (2) that the arrangements between the W. A. Simpkins Company and the Merchants National Bank and W. B. Drake, Jr., cashier, was such as to constitute (275) a partnership, and (3) that the assignment of the draft and bill of lading before these shipments left Raleigh to W. B. Drake, Jr., cashier for the Merchants National Bank, made them liable for the freight charges as assignee of the bill of lading.
There is no dispute as to the amount of the freight charges and the chattel mortgage on 26,000 bushels of cotton seed, the same reciting a $10,000 indebtedness due 30 November, 1912 (four to seven weeks after the shipment took place), was introduced.
This mortgage was to Drake, cashier, and was executed in July, 1912, and was registered.
In October, 1912, W. A. Simpkins Company made seven shipments of cotton seed over the Southern Railroad to Southern points. The custom which had existed between the said shipper and railroad for six or seven years was that the railroad charged the freight and "in ten days, two weeks or thirty days collection was made. The Simpkins Company had a line of credit with the railroad at the time these shipments were made." Referring to the B. L. it will be seen that the same had been marked "Prepaid" before the seed left Raleigh. Plaintiff's witness states "that although the bill of ladingwas marked `Freight Prepaid' it had not been prepaid but credit had beenextended to the Simpkins Company by the railroad and is still due therailroad."
Sight drafts were drawn on Savant and others, with bills of *Page 295 
lading attached, and the defendant bank collected the drafts, in the usual course, and placed the proceeds to the credit of the Simpkins Company, and this company, by its checks on said bank, from time to time, drew out said funds, paying its debts and paying in part a mortgage debt to the bank.
The collections from the drafts amounted to about $6,000, of which $4,000 was retained by the bank on debts due by the Simpkins Company and the remainder paid out on its check.
At the conclusion of the evidence his Honor entered judgment of nonsuit, and plaintiff excepted and appealed.
The plaintiff's counsel admit that there is no evidence of a partnership between the Simpkins Company and either of the defendants, and this cause of action is abandoned.
They, however, insist that the defendants are liable for the freight upon two grounds:
1. That the Simpkins Company was the agent of Drake, cashier, in making the contract of shipment, and that Drake is liable on the contract as an undisclosed principal.
2. That the defendant bank, having taken an assignment of drafts with bills of lading attached, and having (276) collected the money thereon, is liable for the freight as the owner of the property.
There is no evidence of agency except such as arises from the relation of mortgagor and mortgagee, and while the mortgagor, left in possession of goods which, in the contemplation of the parties, are to be disposed of by the mortgagor in the ordinary course of trade, is the agent of the mortgagee to the extent that he may pass the title to the goods, sold in the usual way, to a purchaser, freed of the mortgage lien (Bynum v. Miller,89 N.C. 393), which carries with it "the implied authority to use the necessary and proper means to that end" (Etheridge v. Hilliard,100 N.C. 253), the plaintiff is not in a position to take advantage of this principle.
In the first place, if we assume that Drake is an undisclosed principal, and as such ordinarily liable on the contract of the agent, there is no evidence that either of the defendants had any notice that there was anything due for freight, and, on the contrary, the plaintiff marked the bills of lading "freight prepaid," credit was given solely to the agent; the defendants afterwards, without objection by the plaintiff, settled with Simpkins Co., paying out on its *Page 296 
check from the proceeds of the draft more than enough to pay the freight, and the plaintiff waited nearly three years before making any demand on the defendants, during which time the defendants had numerous opportunities to reimburse themselves, if liable for the freight.
"The qualification of the principal's liability to respond to his agent's contract, as stated in the earlier authorities mentioned, was narrowed by the interpretation adopted in Heald v. Kenworthy, 10 Exch. 739, to the effect that the principal is not discharged from full responsibility unless he has been led by the conduct of the seller to make payment to or settle with the agent; and the doctrine of this case has been reiterated in many subsequent cases, both in England and in this country, where the agent did not contract as for himself but as a broker, or otherwise as representing an undisclosed principal. One of the more recent English cases of this class is Davison v. Donaldson, L. R. 9 Q.B. Div. 623.
But, as is shown in Armstrong v. Stokes, L. R. 7 Q. B. 599, the version of Heald v. Kenworthy, while a correct interpretation of the rule of the principal's liability, when applied to cases in which the seller deals with the agent, relying upon the existence of an undisclosed principal, is not to be applied in those in which the seller has given credit solely to the agent, supposing him to be the principal. This case decides that the principal is not liable when the seller has dealt with the agent, supposing him to be the principal, if (277) he has in good faith paid the agent at a time when the seller still gave credit to the agent, and knew of no one else. See, also, Irvine v. Watson, L. R. 5 Q. B. Div. 102.
Under such circumstances it is immaterial that the principal has not been misled by the seller's conduct or laches into paying or settling with his agent. It is enough to absolve him from liability that he has in good faith paid or settled with his agent. In that case the court was dealing with a contract made by an agent which was within the scope of the authority conferred on him, but which was nevertheless made by the agent as though he were acting for himself as principal. Fradley v. Hyland, 2 L.R.A. 750.
The same principle is stated in 31 Cyc. 1580, as follows: "An undisclosed principal may be relieved from liability by reason of a changed state of accounts between him and the agent, the rule being formerly laid down in England, and now very generally followed in the United States, that where the principal, acting in good faith, has settled with the agent so that he would be subjected to loss were he compelled to pay the third person, he is relieved of liability to the latter. This doctrine is now held in England, and in a few cases *Page 297 
in the United States, to be too broad, and in these jurisdictions the better rule is stated to be that the principal is discharged only where he has been induced to believe that such person has settled with the agent or has elected to hold the latter. In any event, the principal is relieved from liability where he has been induced by the conduct of the third person to settle with the agent." And in Taintor v. Prendergast (N. Y.),38 A.D. 619: "It may be admitted, as was urged in the argument, that whether the principal be considered a foreigner or not, his agent, omitting to disclose his name, would be personally liable to an action. Even in case of a foreign principal, however, I apprehend it would be too strong to say that when discovered he would not be liable for the price of the commodity purchased by his agent. This may indeed be said, when a clear intent is shown to give an exclusive credit to the agent."
And the same result would follow if Drake is a disclosed principal on the facts in this record.
He has no relation to the transaction except as mortgagee, and his mortgage was registered, which was notice to the plaintiff; the contract was made with the Simpkins Company as principal, not as agent; the Simpkins Company had property rights in the cotton seed; credit was given exclusively to the Simpkins Company, and the bills of lading were marked "freight prepaid," pursuant to the contract between the plaintiff and the Simpkins Company.
The editor in the note to Fradley v. Hyland, supra, cites numerous authorities in support of the proposition that (278) "Where a third party, knowing that the agent acts for his principal, elects at the time of the making of the contract to give exclusive credit to the agent, he cannot afterwards sue the principal." And in 31 Cyc. 1570, the author says: "A person who, upon entering into contractural relations with an agent, has full knowledge of the principal, but extends credit to the agent exclusively, cannot thereafter resort to the principal, and the latter is not bound, although the agent acted in the course of his employment and for the principal's benefit."
We are therefore of opinion the plaintiff cannot recover on the ground of agency, and its cause of action against the bank as the owner of the property is equally without foundation as the undisputed evidence is that the bank took the drafts with bills of lading attached for collection, and in such case no title passes. 3 R. C. L. 633; Packing Co. v. Davis,118 N.C. 553.
The plaintiff does not seek to recover against the bank as assignee of the bill of lading under the authority of Finch v. Gregg, 126 N.C. 176, *Page 298 
recognizing that it has been overruled by Mason v. Cotton Co.,148 N.C. 495.
Again every element of an equitable estoppel is present in this case which "arises when any one, by his acts, representations or admissions, or by his silence when he ought to speak out, intentionally or through culpable negligence, induces another to believe certain facts to exist, and such other rightfully relies and acts on such belief, so that he will be prejudiced if the former is permitted to deny the existence of such facts."Boddie v. Bond, 154 N.C. 365, or as stated in different language in Masonv. Williams, 66 N.C. 571, quoting from Barnwell, B., in Cornish v.Abingdon, 4 Hurl. Nor. 549, and approved in Redman v. Graham, 80 N.C. 235: "The rule is that if a man so conducts himself, whether intentionally or not, that a reasonable person would infer that a certain state of things exists, and acts on that inference, he shall be afterwards estopped from denying it."
The plaintiff represented to the defendants that the freight had been paid, and relying on this representation, and without knowledge that it was not true, the defendants, having in hand more than enough money to pay the freight, turned it over to the Simpkins Company, and thereafter, during numerous dealings between the Simpkins Company and the defendants, when there was the opportunity for indemnity, the plaintiff remained silent and did not notify the defendants that the freight had not been paid, and made no demand for the freight for near three years.
Under these circumstances the plaintiff ought not to be (279) permitted to assert its claims, if there was liability on the part of the defendants originally.
Affirmed.
Cited: Whitehurst v. Garrett, 196 N.C. 158; Discount Corp. v. Young,224 N.C. 90; R. R. v. Paving Co., 228 N.C. 99; Lumber Co. v. Banking Co.,248 N.C. 310.