PRESLEY E. BROWN LUMBER COMPANY, INC. v. TEXTILE BANKING COMPANY.

(Filed 30 April, 1958.)

**1. Chattel Mortgages and Conditional Sales § 1:    Partnership § 1—**

A contract under which the vendor retains title to raw materials to be used by the purchaser in the manufacture of articles, with provision that the purchaser should sell the articles manufactured and that upon sale the vendor should own the proportionate part of the accounts receivable or cash realized from the sale, is a conditional sale and does not create a partnership.

**2. Assignment §§ 1, 2—**

A conditional sale of raw materials to be used by the manufacturer in its business, with provision that the manufacturer might sell the manufactured goods, in which event the seller should be entitled to a proportionate part of the accounts receivable, or in the event of a cash sale, to the cash paid, constitutes an equitable assignment of accounts receivable and cash realized by the manufacturer pursuant to the contract.

**3. Assignment § 2:    Chattel Mortgages and Conditional Sales § 11:    Registration § 1—    Registration is not notice as to instruments not authorized to be registered.**

Where a registered contract for the sale of raw materials to be used in the manufacture of articles provides for retention of title in the seller, but that the manufacturer might sell the finished goods, in which event the seller should be entitled to a proportionate part of the accounts receivable or cash realized from such sale, *held*, upon sale by the manufacturer the seller's lien on the specific goods is immediately terminated, and the equitable assignment of the accounts receivable is not within the protective provisions of G.S. 47-20 nor 47-23, and the contract being registered prior to the enactment of Ch. 504, Session Laws of 1957, its provisions are not applicable, and therefore the registration of the contract does not constitute notice of the equitable assignment.

**4. Brokers and Factors § 1—**

By statutory definition a factor advances money to manufacturers or processors.   G.S.  44-70.

**5. Assignment § 3—**

A factor taking an assignment of accounts receivable from the manufacturer has priority over an equitable assignee of such accounts in a registered instrument when at the time of the registration of the equitable assignment there was no statutory provision authorizing its registration.

APPEAL by plaintiff from *Crissman, J.,* January 1958 Civil Term of WILKES.

*W. H. McElwee, W. L. Osteen, and Max F. Ferree for plaintiff, appellant.*

*McLennan & Surratt for defendant, appellee.*

RODMAN, J.   This appeal is from a judgment sustaining a demurrer to the complaint for failure to state a cause of action.

The facts alleged may be summarized as follows: Plaintiff, a domestic corporation, is engaged in the manufacture of "dimension stock, including core stock." (Core stock is the base to which veneer is applied to make furniture.)

Lucas National is a domestic corporation with its principal office in Randolph County. It manufactures bedroom furniture.

Defendant is a New York banking corporation domesticated here and operates under the supervision of the Commissioner of Banks. Defendant engages here in "the banking and factoring business, factoring accounts throughout the State." Its factoring business in this State is extensive amounting to several million dollars each year.

On 28 June 1955 Lucas National entered into an agreement with plaintiff, a copy of which is attached to and incorporated by reference as a part of the complaint. This agreement recites the business in which each of the parties was engaged, the impoverished financial condition of Lucas National, and because of that condition plaintiff's unwillingness to sell core stock to Lucas National on credit, but a willingness to consign core stock to the value of $12,000 to be used by Lucas National in the manufacture of bedroom furniture. The agreement then provides:

"It is further stipulated that when and if said finished produce is sold, that the party of the first part shall be the owner of a portion of the Accounts Receivable for said finished product which is represented by the value of the Core Stock sold in said product and notice is given to all persons, firms and corporations, that the accounts receivable represented by the sale of said finished product is owned in part by the party of the first part, the said proportion of said accounts receivable which is owned by the party of the first part being determined by the value of the Core Stock contained in the finished product for which said accounts receivable is owned. It is further stipulated that when said accounts receivable is paid or in the event said finished product is sold for cash, that the funds derived from said accounts receivable or said cash sale, shall belong to the party of the first part and be its property until the amount represented by the Core Stock is paid to the party of the first part from said moneys received from said accounts receivable or cash sale, it being distinctly understood that the party of the second part is not the owner of said funds but that the party of the second part is collecting said funds as the agent of and on behalf of the party of the first part and is retaining said funds in trust as the agent of and for the party of the first part, the said party of the second part having no interest in said funds which are represented by the sale of the Core Stock which formed an integral part of the furni-

ture but is holding said funds for transmittal to the party of the first part."

Based on the agreement plaintiff alleges: ". . . that the title to the Core Stock was to remain in the plaintiff throughout the entire manufacture of the furniture and the title to the accounts receivable from the sale of the furniture the plaintiff's Core Stock was to remain in the plaintiff until the amount due for the Core Stock had been paid . . ."; the agreement between plaintiff and Lucas National was properly recorded in Randolph County, and defendant had, by reason of such recordation, constructive notice of said agreement, and with this constructive notice procured an assignment from Lucas National of accounts receivable, the property of plaintiff, arising from the contractual rights between it and Lucas National; that defendant had collected these accounts, refused to pay the same to plaintiff, and was indebted to it in the sum of $6,081.66, the balance owing by Lucas National to plaintiff under the agreement of June 1955.

The agreement does not contemplate a partnership between the parties by which each should contribute to the production of a completed article. It is an agreement to sell the raw materials, the title to remain in vendor until paid for. It is a conditional sales contract subject to the provisions of G.S. 47-23.

The agreement provides that Lucas National is to sell the furniture made with the core stock. Lucas National has the right to determine the time and place of sale, to fix the sale price, and how it should be paid—either in cash or on credit. When so sold, plaintiff's lien or claim to the core stock immediately terminated. *Discount Corp. v. Young,* 224 N.C. 89, 29 S.E. 2d 29; *R.R. v. Simpkins,* 178 N.C. 273, 100 S.E. 418; *Etheridge v. Hilliard,* 100 N.C. 250; *Bynum v. Miller,* 89 N.C. 393.

When the furniture was sold, a contractual obligation arose requiring the purchaser to pay the purchase price—a mere chose in action. The most that plaintiff could claim under the agreement of 28 June 1955 with respect to accounts accruing from subsequent sales was a right to seek the aid of a court to compel Lucas National to comply with its contractual obligation and pay for the core wood or assign to plaintiff the proportion owing to him from the sales made of the furniture. His was a right to an equitable assignment. In Restatement of the Law of Contracts it is said in sec. 154 (2): "An assignment of a right expected to arise under a contract or employment not then existing is operative only as a promise by the assignor to assign the right and an authorization to the assignee to enforce it, but neither imposes a duty upon the obligor nor precludes garnishment by the obligee's creditors."

The summary there made accords with judicial decision. *Wike v. Guaranty Co.,* 229 N.C. 370, 49 S.E. 2d 740; *Taylor v. Barton-Child*

*Co.,* 117 N.E. 43; *Re Nelson,* 72 ALR 850; *Maier v. Freeman,* 53 Am. St. Rep. 151; 6 C.J.S. 1067.

An equitable assignment is not within the protective provisions of G.S. 47-20 nor 47-23. As noted by Pearson, C. J.: "There is a marked difference between what may be the subject of a grant and the subject of an executory contract." *Mastin v. Marlow,* 65 N.C. 695. Not until 1945 did the Legislature deem it proper to provide for constructive notice of the assignment of an account receivable, c. 196, S.L. 1945, now incorporated as Art. 14 of c. 44 of the General Statutes. That statute was by express language limited to "a presently subsisting right to the present or future payment of money—(a) Under an existing contract." Not until 1957 was it possible in this State to give constructive notice of the assignment of an account to accrue under a contract to be subsequently made, c. 504, S.L. 1957. The amendment to the 1945 statute became effective 1 May 1957. This action was instituted in March 1957. Defendant was not by the recording in Randolph County of the agreement of 28 June 1955 between plaintiff and Lucas National notified of plaintiff's claim to accounts payable to Lucas National. *Chandler v. Cameron,* 229 N.C. 62, 47 S.E. 2d 528, with annotations appearing 3 ALR 2d 577 et seq.

The complaint alleges defendant's business is banking and "factoring accounts." By statutory definition a factor advances money to manufacturers or processors, G.S. 44-70. Defendant's factoring business in this State, according to plaintiff, amounts to several million dollars a year. Fairly interpreted, the complaint says defendant purchased and took an assignment of the accounts, but it acquired title thereto subject to plaintiff's claim because of the constructive notice imposed by recording the agreement between it and Lucas National. Since the recordation was not notice and did not affect defendant's right to purchase, it follows that the judgment sustaining the demurrer is

Affirmed.