# WESTERN PACIFIC RAILROAD COMPANY *v.* UNITED STATES.

### APPEAL FROM THE COURT OF CLAIMS.

No. 136. Argued January 13, 1921.—Decided March 7, 1921.

1. A railroad company, acquiescing in the practice and rulings of government officials, charged and collected the reduced "land grant" rates for transportation of army officers' effects, upon which it was entitled to collect higher, commercial rates. *Held*, that it had waived its right to collect more and could not recover more in the Court of Claims. P. 355. See *Oregon-Washington R. R. & Navigation Co.* v. *United States, ante*, 339,

2. The transportation of army officers' effects for the Government at government expense may be done at special reduced rates under § 22 of the Interstate Commerce Act. P. 356.

54 Ct. Clms. 215, affirmed.

THE case is stated in the opinion.

*Mr. William C. Prentiss* for appellant:

We are here concerned with the case of a final carrier of interline interstate movements, and it . is immaterial whether land-grant mileage was directly involved in any movement embraced in the claim, or whether the shipments were routed entirely over non-land-grant lines. In the first case the land-grant factor would be injected by the land-grant act applicable. In the latter case the land-grant factor would be injected solely by the equalization agreements entered into by the railroads generally with the Quartermaster General, whereby they agreed to accept.

Thereby the railroad companies accorded the United States reduced rates, as authorized by § 22 of the Interstate Commerce Act, but only as to property, "for which the United States is lawfully entitled to reduced rates over land-grant roads,"- and such reduced rates to be the "lowest net rates lawfully available as derived through deductions account of land-grant distance from a lawful rate filed with the Interstate Commerce Commission applying from point of origin to destination at time of movement."

As we are concerned here only with property for which the United States is not lawfully entitled to reduced rates over land-grant roads, both the land-grant acts and the equalization agreements disappear from the equation, and there remains the plain case of shipments made at the published tariff rates, on account of which the claimant, as the final carrier, has been paid less than the full amount and is suing for the difference. .

Under the Interstate Commerce Act the final carrier is

not only empowered to collect the through charge, but is burdened with the duty and obligation of collecting the full published tariff rate and is powerless to relieve or release a shipper or consignee from any part of the same. *Poor* v. *Chicago, Burlington & Quincy Ry. Co.,* 12 I. C. C. 418; *Louisville & Nashville R. R. Co.* v. *Maxwell,* 237 U. S. 94, 97, 98.

The provision in § 22 of the Interstate Commerce Act "that nothing in this act shall prevent the carriage, storage, or handling of property free or at reduced rates for the United States, State, or municipal governments," etc., is special authority for carriers to depart from established tariff rates (I. C. C. Conference Ruling 208*e*), and extends only to government property (I. C. C. Conference Rulings 33, 36 and 452). The fact that the Government assumes the freight charge is immaterial (I. C. C. Conference Rulings 107, 431).

And that the Government recognizes that (except as provided in § 22) it is reciprocally bound by, and entitled to the benefit of, the Interstate Commerce Act, is evidenced by the numerous instances where it has applied to the Interstate Commerce Commission for relief. *United States* v. *Adams Express Co.,* 16 I. C. C. 394; *United States* v. *Baltimore & Ohio R. R. Co.,* 15 I. C. C. 470; *United States* v. *Denver & Rio Grande R. R. Co.,* 18 I. C. C. 7; *United States* v. *New York, P. & N. R. R. Co.,* 15 I. C. C. 233; *United States* v. *A. & V. Ry. Co.,* 40 I. C. C. 406.

Even if § 22 could be construed to authorize the carriers to contract with the Government for reduced rates on other than government property—officers' effects, for instance—the situation here would not be changed, for the shipments in question were made expressly at the regular tariff rates. The equalization agreements did not apply, because the property of officers and employees was not property as to which the Government was lawfully en-

titled to land-grant rates. The regular tariff rates became the rates fixed by law and the final carrier could not by settlements, voluntary or otherwise, with the government officers, waive its right and obligation to collect the full amount.

Acquiescence has no application here as raising an implied agreement as to rates or as injecting into the bill of lading contracts an intent contrary to the plain language thereof.

The shipments were made upon bills of lading each constituting a separate and distinct contract. The right of action upon each of these contracts was separate and distinct. Settlement under one, or any number, at less than the contract rate, could not prejudice the right of action on any other. And outlawry of claim on earlier such contracts could not prejudice the rights of action on the later ones within the period of limitation.

Any defense to the items in suit, therefore, must arise out of the particular contracts under which the shipments were made and the conduct of the parties in connection therewith, and, however phrased, such defense resolves in final analysis into the contention that payment and acceptance in each instance constituted accord and satisfaction.

But, the doctrine of accord and satisfaction, as a defense to freight charges, has been eliminated by the Interstate Commerce Act.

Even aside from the controlling effect of the Interstate Commerce Act, the doctrine of accord and satisfaction would not apply, for there would then be presented the plain case of payment by the Government of less than it contracted to pay in each of the numerous express contracts, without any consideration to the claimant and without any prejudice to the Government.

*Mr. Assistant Attorney General Davis* for the United States.

MR. JUSTICE McKENNA delivered the opinion of the court.

The basic proposition in this case, and most of its subsidiary considerations, are the same as in No. 134, *ante*, 339. It was argued at the same time as the latter case, and, as in that case, it is to recover amounts withheld by the accounting officers of the Government as land-grant deductions in settlements for transportation of the personal effects of Army officers.

It is asserted, however, that this action differs from No. 134 in that the Western Pacific Railroad was not completed and in operation until 1910 so that it is said "there is absent the element of previous course of dealings relied upon by the Government, and in that there was introduced in evidence" testimony to the effect that the first voucher presented for transportation service was for full tariff rates.

It is stated in the findings that the real claimants in the case are the receivers of the railroad but that its name is used to designate claimants for convenience, and that between June 10, 1910, and March 18, 1915, the railroad, at the request of the United States as shipper or consignor, received from other railroad companies at connecting points, on government bills of lading, and transported over its lines, the effects and property of officers of the United States Army, changing stations under orders.

It further appears that from June 10, 1910, to March 18, 1915, the presentation of claims, character of vouchers accompanying the same, action thereon by the accounting officers of the Government, payment and receipt, were the same as in No. 134, except, it is found, that "settlements for charges on freight shipments on Government bills of lading were in charge of one David A. McLean, head of the freight revising bureau in the office of the general auditor

of the plaintiff [appellant] at San Francisco." And it is found "it was the practice of said McLean to revise the bills of lading and apply the rates applicable on the traffic at commercial rates, make the land-grant deduction and compute the freight charges at the net rate. After a month's bills of lading had been revised it was his practice to check up with the quartermaster's office and adjust differences, where there were any differences, as to the correct charges. He then caused the claims to be stated on the prescribed voucher form and after being signed they, with the bills of lading attached, were forwarded to the quartermaster for payment. It appears that to the best recollection of said McLean he stated the first of these claims, during this period, at commercial rates, but being informed by the quartermaster's office, of the applicability of land-grant rates under the holding of the Comptroller and the established practice he restated the claim on a land-grant basis. It further appears that he had just come to the service of the plantiff; that he had had no experience in the rendering of bills for Government transportation; that as soon as he learned the custom with reference thereto he rendered bills for transportation of the character here involved at land-grant rates and continued to do so during all of said period. The rendering of the bill referred to at commercial rates, if in fact he so rendered it, was due to his ignorance of established practice and not because of any intention to question the propriety of the practice or to claim as a matter of right the application of commercial rates. It is not shown that at any time during this entire period he ever questioned the application of land-grant rates to such transportation or protested any settlements on that account, but all bills rendered by him, except as stated, were rendered at land-grant rates, and when so rendered he did not expect any further compensation and never expected compensation at other than land-grant rates until after the decision

of the *Chicago, Milwaukee & St. Paul Case* by this court." [1]

It is further found that "the difference between the amounts claimed by the plaintiff and paid on account of said transportation during said period and the amount it would have received had it claimed and been paid full commercial rates without land-grant deduction is $5,760.89." The rulings of the accounting officers are detailed in the findings.

From March 18, 1915, to August 1, 1916, it is found that appellant was entitled "to payment . . . at the regular published tariff rates applicable." The government accounting officers, notwithstanding, "issued warrants for net amounts after making land-grant deductions." Against this appellant protested. The amounts deducted amounted to $851.78.

The conclusion of the court was, and its decision was, that appellant was entitled to judgment for the sum of $851.78 and that as to the other amounts its petition should be dismissed. For this the court gave as authority its decision in *Denver & Rio Grande R. R. Co.* v. *United States*, decided on the same day, 54 Ct. Clms. 125.

The opinion in the latter case is set out in the record at page 16.

The argument in this case is the same as in No. 134, and rests on the same considerations. This case, as we have seen, was decided on the authority of *Denver & Rio Grande R. R. Co.* v. *United States*, 54 Ct. Clms. 125, and the latter on *Baltimore & Ohio R. R. Co.* v. *United States*, 52 Ct. Clms. 468 and 534.

A contention, however, is made that was not made in No. 134, that is, that "under the Interstate Commerce Law the final carrier [appellant was final carrier of the transportation with which this case is concerned] is not

only empowered to collect the through charge, but is burdened with the duty and obligation of collecting the full published tariff rate and is powerless to relieve or release a shipper or consignee from any part of the same."

.The further contention.is that within this obligation is the property in the pending case. The immediate answer is that § 22 of the Interstate Commerce Act permits reduced rates to the United States, and that by Conference Ruling of the Interstate Commerce Commission No. 33 of February 3, 1908, § 22 is made applicable to property transported for the United States. The transportation in the present case was for the Government, and in providing for it and paying for it the Government performed a governmental service.

*Judgment affirmed.*

MR. JUSTICE PITNEY and MR. JUSTICE CLARKE concur in the result.