# OREGON—WASHINGTON RAILROAD & NAVIGA-
## TION COMPANY *v.* UNITED STATES.

### APPEAL FROM THE COURT OF CLAIMS.

No. 134. Argued January 13, 1921.—Decided March 7, 1921.

1. Personal property of army officers, transported for them, when changing stations, on government bills of lading at government expense, pursuant to army regulations, is not property of the United States within the meaning of the railroad land-grant acts and is not entitled to the special freight rates which those acts allow to the Government. P. 344.
2. Where a railroad company for a long period, exceeding the period of the statute of limitations, made a uniform practice of charging on its books and billing and collecting the reduced land-grant rates, for transportation of property of army officers on which it was entitled to claim the higher commercial rates, acquiescing without protest, in the practice and decisions of government officials, which treated the property as public property to which the lower rates were applicable, *held* that its conduct was inconsistent with any intention to reserve its right to more than it collected, and that it could not recover more in the Court of Claims. P. 345.

54 Ct. Clms. 131, affirmed.

THE case is stated in the opinion.

*Mr. William R. Harr,* with whom *Mr. Charles H. Bates* was on the briefs, for appellant:

The presentation of claimant's accounts for the transportation services involved at commercial rates less land-grant deductions, does not, under the circumstances of this case, estop it from suing for the balances lawfully due therefor in the Court of Claims within the six-year period of limitation. *Pickley* v. *United States,* 46 Ct. Clms. 77, 91; *Pennsylvania* v. *United States,* 36 Ct. Clms. 507; *Great Northern Ry. Co.* v. *United States,* 42 Ct. Clms. 234, 238; *Cape Ann Granite Co.* v. *United States,* 20 Ct. Clms. 1; *Chicago & Northwestern Ry. Co.* v. *United States,* 104 U. S. 680, 686.

The claimant was bound, by law and its contracts, to carry the household goods and other personal property of army officers and other government officials, when offered them by the shipping quartermasters of the Army, and it had a right to rely on the provisions of law and the terms of its contracts for the proper adjustment of its compensation, and was not precluded from claiming the full amount due for such transportation, under the law and its contracts, simply because it accepted payment of a less amount, without protest, from the disbursing officers or the accounting officers of the Government, especially when, as held by the Court of Claims, it would have been useless, so far as payment was concerned, for it to have presented its accounts for this transportation without land-grant deductions.

The *Railway Mail Service Cases*, 13 Ct. Clms. 199; 103 U. S. 703, cited in the opinion of the Court of Claims in the *Baltimore & Ohio Railroad Case,* 52 Ct. Clms. 468— a similar case to the one at bar and the opinion in which is relied upon by the court in this case—falls clearly within the principle of estoppel.

In the case at bar there was no contention that the Government has been prejudiced by the attitude of the railroads. On the contrary, the Government has profited by the failure of the companies to sue earlier in the Court of Claims for full tariff rates, to the extent of the items that are barred by the statute of limitations and by the use by the Government of the amounts now claimed. Moreover, appellant expressly requested a finding by the Court of Claims on the question of prejudice, but its request was overruled.

Part payment alone did not satisfy the debt. *People* v. *Hamilton County,* 56 Hun, 459; *Fire Insurance Association* v. *Wickham,* 141 U. S. 564, 577; *Finney* v. *United States,* 32 Ct. Clms. 546.

The settlements were simply matters of accounting

and not of contract, and hence subject to subsequent correction and restatement by the carrier subject only to the limitations of time fixed by law.

An account stated or settled is only prima facie evidence of the extent of the liability of the debtor, and may be impeached for fraud, omission or mistake in law or fact. *Perkins* v. *Hart,* 11 Wheat. 237, 256; *Burrill* v. *Crossman,* 91 Fed. Rep. 543–545; *Chicago, Milwaukee & St. Paul Ry. Co.* v. *Clark,* 92 Fed. Rep. 968.

The rule as to mistake of law is usually invoked where a party seeks relief from some instrument he has executed, or from some payment that he has made, or from some action that he has taken, on the ground that he executed such instrument or paid such money or took such action while laboring under a mistake as to his legal rights in the premises. Such are *Bank* v. *Daniel,* 12 Pet. 32, and *United States* v. *Edmondston,* 181 U. S. 500, relied on by the Court of Claims. But such is not the case here.

The situation here is that the Government is endeavoring to avoid responsibility for the balances due claimant under this plea of mistake of law, having set up, by way of defense to this suit, that the claimant rendered its bills for less than the full amount due it by mistake as to its full legal rights in the premises. This claimant denies, and there is no finding by the court to any such effect. On the contrary, the fair presumption from what the Court of Claims said in its opinion, and from the allegations of the petition, is that claimant was not laboring under any mistake as to its legal rights, but merely rendered its bills at land-grant rates because it knew the disbursing and accounting officers of the Government, following the Comptroller's views and decisions would not pay full commercial rates therefor, although in some instances, and probably at first, it or some of its officers might not have known that the prop-

erty shipped was not government property, which would be a mistake of fact.

But even if claimant had been laboring under a mistake as to whether the Government was entitled to land-grant rates on this class of transportation, that fact would not preclude it from recovering any balances due, since the debt owing it by the Government was not entirely extinguished by part payment only. Claimant would be entitled to recover the balances due by suit in the Court of Claims within the statutory period, unless the failure of the claimant to claim the full amount in the first instance can be said to have so prejudiced the Government as to make it unjust and inequitable for the claimant to maintain a suit for the balances, which it is clear from this record is not the case here, no matter in estoppel being pleaded or proved. *Perkins* v. *Hart*, 11 Wheat. 237, 256; *Pickley* v. *United States*, 46 Ct. Clms. 77; *Ward* v. *Ward*, 12 Ohio Civ. Dec. 59. Distinguishing: *Utermehle* v. *Norment*, 197 U. S. 40, 56: *Central Pacific R. R. Co.* v. *United States*, 28 Ct. Clms. 427, 164 U. S. 93.

There was no estoppel by reason of the provisions in the Army Appropriation Acts.

*Mr. Assistant Attorney General Davis* for the United States.

MR. JUSTICE McKENNA delivered the opinion of the court.

This action brought by appellant is for the recovery of certain balances amounting to the sum of $4,288.01, being the difference between the amounts paid at certain rates for transportation of the effects of Army officers changing stations and those which it is alleged were legally chargeable.

The Court of Claims adjudged that appellant was not

entitled to recover and dismissed its petition. The cost of printing the record in the case was awarded to the United States.

There were findings of fact which show that the accounts were presented for payment to the proper accounting officers of the Government in the regular way and payments were made by the disbursing officers of the Government on vouchers certified to be correct and presented by appellant. The charges so presented and paid were at rates for such transportation over land-grant roads fixed in certain agreements known as the "Land-grant equalization agreements," by which, to quote from the findings, "the carriers agreed, subject to certain exceptions, not material here to be noted—to accept for the transportation of property moved by the Quartermaster Corps, United States Army, and for which the United States is lawfully entitled to reduced rates over land-grant roads, the lowest net rates lawfully available, as derived through deductions account of land-grant distance from a lawful rate filed with the Interstate Commerce Commission from point of origin to destination at time of movement." That is, such freight was accepted by the carriers without prepayment of the charges therefor upon the basis of the commercial or tariff rates with appropriate deductions on account of land-grant distance as provided in the Railroad Land-grant Acts. It is manifest, therefore, that the commercial rates were higher than the land-grant rates, and this action is to recover the difference between them and the land-grant rates presented for payment, as we have said, by appellant, and paid by the transportation officers of the Government.

After stating the action to be "for the recovery of various amounts, aggregating $4,288.01, in addition to those paid on account of 176 items of freight transportation furnished to and paid for by the United States," the

court by Mr. Justice Downey said, the action "is for a
sum as to each item of transportation in addition to
that already claimed and paid as claimed for the same
items and is not for any other or different or additional
service nor for omitted items." And further, "the case
therefore involves not only the question of the applica-
bility of land-grant rates to this class of freight trans-
portation, a question already decided adversely by this
court, but it involves further questions as to the right,
under the circumstances of the case, to now recover
amounts not then claimed."

The decision referred to is *Chicago, Milwaukee & St.
Paul Ry. Co.* v. *United States*, 50 Ct. Clms. 412, and the
ground of its ruling was that the freight transported was
not the property of the United States, it being the effects
of Army officers, and, therefore, was not entitled to land-
grant deductions but was subject to the commercial
tariff. Necessarily, therefore, the pending case must turn
on other questions, for the property transported was the
property of Army officers and subject, therefore, inde-
pendently of other considerations, to the commercial
rates. Appellant in the present case was paid sums less
than those rates and there is left for consideration only
its present right to recover the difference between them
and the land-grant rates, the latter being those that
were paid.

The Government, however, is not inclined to that
limitation of the issue, and attacks the ruling of which
it is the consequence, and repeats the contention decided
against it in that case, and again insists that the property
transported was government property and entitled to
land-grant rates and all else is irrelevant. To this ap-
pellant replies that the Government did not appeal from
the decision and must be considered as having accepted
it. The effect is rather large to attribute to mere non-
action, but we need not make further comment upon it

because we think the decision of the Court of Claims was correct. The personal baggage of an officer is not property of the United States and as such entitled to transportation at land-grant rates, and we are brought to the grounds of recovery urged by appellant.

There are reasons for and against them. The assertion is of a right of action and recovery against apparently a concession during a long course of years to an explicit and contrary assertion by the Government. Appellant attempts to explain the concession or, let us say, its nonaction, as the compulsion of circumstances, and of a belief of the futility of action, and now urges that it never intended to relinquish but always intended to assert its right. The record, however, has much against this explanation, or that can not be accommodated to it, if we may ascribe to appellant the usual impulses and interest that influence men.

It "and its predecessor company, whose properties, franchises, and accounts it acquired, charged upon its books" the transportation charges at land-grant rates and not at regular commercial rates, so rendered its bills to the Government, and received payment without protest or the assertion of a greater compensation. And there was prompting to protest and such assertion. In 1901, according to a finding, "the Union Pacific stated a claim against the United States at regular tariff rates for transportation of household goods and professional books of an officer of the Army over the railroad bridge at Quincy, Illinois." The claim was disallowed and thereafter the Union Pacific stated its accounts at land-grant rates. It is also found that in 1891 and in 1904 there was conversation between the Comptroller of the Treasury and counsel in regard to the rulings of the Comptroller though not, the Court of Claims says, to a claim then pending before the officer. Appellant, however, was not stirred to either opposition or protest by the incident

with the Union Pacific or the conversation with the
Comptroller but continued to render its accounts at land-
grant rates, and accepted payment without opposition.
or action until the decision of the Court of Claims in
*Chicago, Milwaukee & St. Paul Ry. Co.* v. *United States,*
*supra.*

Counsel seem to make a merit of this uncomplaining
and unresisting acquiescence and observe that the Govern-
ment by it obtained the advantage of the plea of the
statute of limitations. The fact is significant. It is
inconsistent with the reservation of a right and an in-
tention to subsequently make a judicial assertion of it.
Creditors are not usually so indulgent and the appellant
had remedies at hand. The courts were open to it, cer-
tainly protest was open to it. Its explanation for this
non-action is not satisfactory. "It is advised and be-
lieves," is its allegation, and now its contention, that
"its auditors and agents were led and constrained to
render its bills and vouchers . . . at tariff rates
with land-grant deductions, because said shipments were
for the Quartermaster's Department of the Army and
upon *Government* bills of lading which in terms are only
applicable to 'Government property' and 'public prop-
erty,' *and also (because) the Comptroller of the Treasury
(whose decisions are by law made final and controlling
upon the Executive Departments of the Government) had
held that such transportation, upon Government bills of
lading, when within the amount authorized to be transported
by Departmental regulations at the expense of the Govern-
ment, was quasi-public property and entitled as such to
land-grant rates,"* and that it did not intend to waive its
right to payment in full or to sue, "if so advised" for the
balances due "so far as the same were not barred by the
statute of limitations."

The italics are counsel's and we repeat them as they
give emphasis to counsel's conviction of the justification

of the excuse. We do not share it. The mere mechanism of the bills of lading or their false designations of the property transported could not have imposed on anybody, certainly not on "the auditors and agents" of a railroad company; and the decisions of the Comptroller were as much open to dispute then as now and resort to suit an inevitable prompting, and yet, we have seen, the statute of limitations was permitted to interpose its bar. The excuse of appellant is hard to credit. Its "auditors and agents" were not ignorant of affairs, nor unpractised in the controversies of business, and the means of their settlement. The auditors and agents of railroad companies are not usually complaisant to denials of the rights of the companies they represent. We do not say this in criticism, for such is their duty, the necessary condition of their places.

We are forced, therefore, to conclude that appellant's non-action was deliberate, based upon a consideration of its advantages, with no thought of ultimate assertion against the decision of the Government until stirred to acquisitiveness by the decision in the *Chicago, Milwaukee & St. Paul Case,* a decision which we may say, in passing, was declared by the Court of Claims to have been improvidently given. *Baltimore & Ohio R. R. Co.* v. *United States,* 52 Ct. Clms. 468.

The case therefore falls within the rulings of *United States* v. *Bostwick,* 94 U. S. 53; *Baird* v. *United States,* 96 U. S. 430, *Railroad Company* v. *United States,* 103 U. S. 703; *Central Pacific R. R. Co.* v. *United States,* 164 U. S. 93. And they have supplemental force in *United States* v. *Edmondston,* 181 U. S. 500; *Utermehle* v. *Norment,* 197 U. S. 40.

These views lead to an affirmance of the judgment upon the record as it now stands. It should be said, however, that they are based on the concessions of appellant to the action of the accounting officers, and the

Court of Claims makes this a point in its decision. The court said that from the "long continued uniform course of action by" appellant "for a long period of years," "it had no intention of claiming anything more as to these transactions than that claimed in the certified vouchers and paid." And added, "All the facts justify this conclusion, for a course of conduct is more potent than assertions of belief unacted on. But if such a conclusion were otherwise subject to question it appears from the evidence that plaintiff's (appellant's) charge upon its books was only of the amount claimed in its vouchers and that when that amount was paid 'the transaction was behind us.' The quoted language is the language of plaintiff's auditor."

In explanation of this, it may be said, and in contradiction of its implication, appellant requested findings by the court that the transaction of the appellant and its predecessor company "was regarded by the auditing department of the company as closed, so far as they were concerned, but as subject to subsequent adjustment or suit in court if subsequently found to be incorrect." And further, that the Government considered the accounts between "the carriers as in the nature of running accounts, subject to correction as the occasion arises, in the light of the law and the facts." And it is contended that the evidence supports such conclusion. This is disputed by the Government, and it is doubtful. The Government concedes that a motion to remand the case for additional findings has foundation in the record, but contends "that the requests are without merit and that the case is fully covered by the facts as found." And adds, "of course, in so far as the motion tends to request the Court of Claims to change findings made it is futile, as the findings are conclusive."

The Government further urges that the proposed amendment to Finding VI is covered by Findings VI

and IX, and is only a request "to change a negative to a positive finding"; that the amendment to Finding X is "rather an argument that certain conclusions should follow from facts found" and that the court's "conclusion, from the facts found, is that both parties regarded the settlements as final, not as tentative." The amendment to Finding XI, is, the Government says, "a request to find evidence," which is contrary to the rules, and besides the evidence is immaterial.

We concur with the Government that the request for findings is an effort to change negative to positive findings. The reasoning of the court expresses implicitly, if not explicitly, a view contrary to that expressed in the request. In other words, the court regarded the settlements of appellant with the Government as final, and not as tentative.

*Judgment affirmed.*

MR. JUSTICE PITNEY and MR. JUSTICE CLARKE concur in the result.