## CHICAGO, R. I. & P. RY. CO. v. CENTRAL WAREHOUSE CO.

(District Court, D. Minnesota, Third Division. July 30, 1926.)

Carriers ⬳194—Railroad, which delivered sugar shipment to warehouse company, which was indorsee of shipper's order bill of lading, reciting that charges had been prepaid can collect unpaid charges from warehouse company (Interstate Commerce Act [Comp. St. § 8563 et seq.]).

Railroad, which delivered sugar shipment to warehouse company, to whom consignor had indorsed and delivered shipper's order bill of lading, reciting that charges had been prepaid, can collect unpaid charges from warehouse company, since by accepting such shipment it became liable for carrier's lawful charges, in view of Interstate Commerce Act .(Comp. St. § 8563 et seq.).

At Law. Action by the Chicago, Rock Island & Pacific Railway Company against the Central Warehouse Company. On demurrer to the answer. Demurrer sustained.

O'Brien, Horn & Stringer, of St. Paul, Minn., for plaintiff.

Briggs, Weyl & Briggs, of St. Paul, Minn., for defendant.

JOHN B. SANBORN, District Judge. The facts, as they appear from the complaint, are substantially as follows: That on May 17, 1923, the Cullen Wholesale Grocery Company delivered to the Union Pacific Railroad Company a carload of sugar for transportation over its line and the line of the plaintiff to St. Paul, Minn., upon a shipper's order bill of lading in the standard form, consigned to the order of the Cullen Wholesale Grocery Company, notify the defendant. That the Grocery Company indorsed and delivered the bill of lading to the defendant, and the car of sugar was transported, as agreed, to St. Paul, Minn. That at St. Paul, Minn., upon the arrival of this shipment, the defendant surrendered to the plaintiff the order bill of lading and demanded the carload of sugar, and the plaintiff delivered the same to the defendant. That the duly established and published rate for the transportation of this shipment from Omaha to St. Paul, plus the reconsigning charge,

was $253.12; that this amount has been demanded from the defendant by the plaintiff, and has not been paid. That the Cullen Wholesale Grocery Company was at the time the shipment moved, and has been at all times since, insolvent, and the plaintiff has been unable to collect its charges from the Grocery Company, although it has attempted so to do.

The answer admits the principal allegations of the complaint, but alleges that the shipment moved under an order bill of lading, a copy of which is attached to the answer, and which recited that the freight charges were prepaid, and that the defendant, in handling the shipment, acted in reliance upon the representations in such bill of lading. The question raised by the demurrer to the answer is whether a shipper, who delivers to a consignee a shipment upon such a bill of lading as this, reciting that the charges have been prepaid, can collect its charges from such consignee.

On this question the decisions of the courts are not in harmony. In the case of Great Northern R. Co. v. Hyder (D. C.) 279 F. 783, decided April 15, 1922, the District Court of the Western District of Washington, Southern Division, held that "a consignee, who is not at any time the owner of goods shipped, who has not agreed with either the shipper or the carrier that he will pay the freight, and who accepts the goods on the carrier's mistaken representation that the freight has been prepaid, is bound by such acceptance to pay the freight."

In the case of Western & Atlantic R. Co. et al. v. Underwood, 281 F. 891, the District Court of the Northern District of Georgia held that a consignee could not accept delivery of an interstate shipment of goods without incurring liability for the carrier's lawful charges, known or unknown, supposed to be prepaid or otherwise, and regardless of what the consignee's actual relation to the shipper was.

In the case of Davis v. Akron Feed & Milling Co., 296 F. 675, on March 6, 1924, the Circuit Court of Appeals of the Sixth Circuit held that, where wheat, which had been reconsigned several times, was sold to the defendant f. o. b. cars in the defendant's city, and the carrier, through mistake, told the defendant that the freight had been paid to a certain point, and the defendant paid the freight charges from that point, and paid the seller the balance of the purchase price after deducting the freight paid, the carrier was estopped from demanding fur-

ther payment of freight by the defendant consignee.

In the case of Cincinnati Northern R. Co. v. Beveridge et al. (D. C.) 8 F.(2d) 372, the District Court of the Eastern District of Virginia, at the April term, 1925, held that neither the person presenting a bill of lading nor the one receiving a shipment .is liable for transportation charges, where a prepaid bill of lading was issued to the shipper, relying on his credit. The exact question has not, apparently, arisen in the Supreme Court of the United States, but the application of certain principles established by that court in cases somewhat similar can be used to test the correctness or incorrectness of the decisions referred to.

In the case of Pittsburgh, Cincinnati, Chicago & St. Louis Ry. Co. v. Fink, decided November 10, 1919, and reported in 250 U. S. 577, 40 S. Ct. 27, 63 L. Ed. 1151, it appeared that the consignee had received from the railway certain goods upon a waybill specifying charges of $15, which was paid upon receipt of the goods. It appeared that the tariff rate was $30, and suit was brought for the difference. There was no agreement between the consignor and the consignee that the latter should pay the freight charges. The court points out that the Act to Regulate Commerce made it unlawful for the carrier to receive compensation less than the tariff rate; that the consignee and carrier must be presumed to know the law, and that the only rate that could be charged was the lawful rate; that the consignee was only entitled to the merchandise when he paid, for the transportation of it, the legal rate; that the carrier had a lien upon the goods for its charges which could only be discharged, and the consignee become entitled to the goods, upon payment. The court refers to the fact that instances of individual hardship cannot change the policy which ,Congress has embodied in its statute, in order to secure uniformity. It is further pointed out that the fact that the consignee was not the owner of the goods could not lessen his obligation to pay the legal rate when he accepted them, and that estoppel could not become the means of successfully avoiding the requirement of the act as to equal rates, in violation of the provisions of the statute.

The case of New York Central & Hudson River Ry. Co. v. York & Whitney Co., 256 U. S. 406, 41 S. Ct. 509, 65 L. Ed. 1016, decided May 16, 1921, was a suit to collect an undercharge upon shipments to York & Whitney Company, which asserted that it had accepted the shipments on the understanding that the charges were as reported, and had not agreed to pay more. The court held that the transaction between the parties amounted to an assumption by the consignee to pay the only lawful rate it had the right to pay, or the carrier the right to charge, and that the consignee could not escape the liability imposed by law through any contract with the carrier.

In the case of Louisville & Nashville R. R. Co. v. Central Iron & Coal Co., 265 U. S. 59, 44 S. Ct. 441, 68 L. Ed. 900, decided May 5, 1924, it was held that, in the absence of a governing tariff provision, delivery of the goods for shipment does not necessarily import an obligation of the shipper to pay the freight charges, and the carrier and shipper are free to contract as to when and by whom payment shall be made, subject to the rule against discrimination. The court said:

"The shipment being an interstate one, the freight rate was that stated in the tariff filed with the Interstate Commerce Commission. The amount of the freight charges legally payable was determined by applying this tariff rate to the actual weight. Thus they were fixed by law. No contract of the carrier could reduce the amount legally payable, or release from liability a shipper who had assumed an obligation to pay the charges. Nor could any act or omission of the carrier (except the running of the statute of limitations) estop or preclude it from enforcing payment of the full amount by a person liable therefor."

Applying the law, as above stated, to the present situation, the only question to be determined is whether the defendant in this case is liable to pay the freight charges, and about that there can be no doubt under the decisions in Pittsburgh, Cincinnati, Chicago & St. Louis Ry. Co. v. Fink, supra, and New York Central & Hudson River Ry. Co. v. York & Whitney Co., supra, holding that, if a shipment is accepted, the consignee becomes liable, .as a matter of law, for the full amount of the freight charges, whether they are demanded at the time of delivery or not until later. At the time the defendant in this case accepted the shipment in question, it became liable for the carrier's lawful charges. The carrier had no power to agree to waive those charges. There was nothing which it could say or do which would create an estoppel, which would prevent its performing its duty of collecting them. The case presents another instance of individual hardship caused by the policy of the government as expressed in the Act to Regulate Commerce (Comp. St. § 8563 et seq.), in or-

der to secure uniformity of charges for transportation and to prevent discrimination.

For the foregoing reasons, the demurrer must be sustained. It is so ordered.