## DOLLAR S. S. LINE v. UNITED STATES.
### No. 7145.

Circuit Court of Appeals, Ninth Circuit.
Jan. 25, 1935.

Hugh Montgomery and E. C. Kester, both of San Francisco, Cal., for appellant.

H. H. McPike, U. S. Atty., and Esther B. Phillips, Asst. U. S. Atty., both of San Francisco, Cal.

Before WILBUR and GARRECHT, Circuit Judges, and NORCROSS, District Judge.

NORCROSS, District Judge.

The Dollar Steamship Line brought an action under the "Tucker Act" (28 USCA § 41, cl. 20), against the United States to recover $5,043.81. The case was tried upon admitted and stipulated facts, and a judgment was rendered in favor of the United States. From the judgment, plaintiff appeals.

According to the undisputed facts, the Dollar Steamship Line transported the United States mail from ports in the United States (New York City and Jacksonville, Fla., via Havana) to the Canal Zone. Manifests were made up by the postmasters showing the kinds and weights of mails transported on the President ships during December, 1925, and January, 1926, and payment was asked by the Steamship Company, upon the basis that the mails so transported to the Canal Zone were foreign mails. Shortly before this, the Comptroller General of the United States had held that where post offices are established to serve United States forces in foreign ports, such offices are to be classed as "domestic offices" and that, therefore, such mails are to be considered domestic mails. The accounts submitted for December, 1925, and January, 1926, in so far as they covered mail carried to the United States forces on the Canal Zone by the Dollar Steamship Line, were not paid at the foreign mail rates.

For some time prior to the transportation of the mails involved in this controversy, appellant transported mails for appellee to the same ports and was paid at the rate provided for the transportation of foreign mail. Accounts were prepared in appellant's favor and approved by the Postmaster General on the basis that the mails so handled and transported were foreign mails, which entitled the appellant to compensation amounting to $6,100.51. The General Accounting Office concluded that the rate applicable for transportation of mails between ports of the United States and the Canal Zone was that applying between ports in the United States and its possessions, and reduced the accounts to make them aggregate $1,044.10, or $5,056.41 less than the amount approved by the Postmaster General, and appellant was paid the lesser amount.

On March 29, 1926, appellant communicated with the Post Office Department by letter reading:

"We wish to refer you to the following differences which exist between remittances as sent by yourselves and original manifests received from the Postmasters at New York City and Jacksonville, Florida covering mail dispatched on our President boats. * * *

"We are somewhat at a loss to understand what these differences cover as these amounts have previously been paid according to the manifests received from the various Post Masters.

"We therefore ask that you furnish us with detailed information covering these various reductions, at your earliest convenience."

To this letter the Post Office Department replied by letter of date April 22, 1926, containing the following statements:

"In reply you are informed that these differences represent the weights of mails destined to the Canal Zone and that payment has been withheld by the General Accounting Office for the reason that they consider this service as domestic.

"No doubt payment will be made in the near future for conveying these mails but at a rate less than that paid for mails conveyed to foreign countries."

A letter from the Comptroller General to appellant of date May 6, 1926, contained the statement:

"The inclosed Post Office Department warrant is issued in settlement of claim for conveying mails from New York and Havana, Cuba, to Canal Zone during December, 1925, Jan. and Feb. 1926, @ $2.00 per 100 lbs. ........................$306.32."

A letter from appellant addressed to General Accounting Office, Post Office Department Division, of date May 27, 1926, contains, among others, the following statements:

"We have had considerable correspondence with the Government regarding the mail revenue from New York and Havana to the Canal Zone and under date of April 22nd, 1926 we received a letter from the 2nd Asst., Postmaster General's Office, stating that the revenue from the above named ports to the Canal Zone would probably be considered as domestic and as such would be entitled to domestic rates.

"Please give us a schedule of these rates as the only information we have at the present time is—Letter and Post Cards at the rate of 6¢ per pound and Prints and Parcel Post at the rate of 2½¢ per pound.

"We would also request that you advise us by what manner we may divide your form #2963 in order to estimate the mail revenue on the various vessels before payment is received. * * *

"In order to avoid confusion of this sort we are requesting that you take the matter up with the Post Masters at New York and Havana, requesting that they separate the revenue accruing from their ports to the Canal Zone into these two components, that is separating the part which takes the foreign rate from the amount which takes the domestic rate."

A letter from the General Accounting Office, Post Office Department Division and signed by the Comptroller General, addressed to appellant of date June 7, 1926, reads:

"In reply to your letter of the 27th ult., relative to the payment of $156.80 for the conveyance of mails from New York and Havana, Cuba, to Canal Zone during the month of March, 1926, I am inclosing herewith itemized statements showing the sailings and weights of mail carried by each vessel.

"The rate of $2.00 per hundred pounds is applied to all classes of mails conveyed between ports of the United States and its island possessions in the Atlantic as that is the existing contract rate on domestic mails now in operation."

Following the decision of the Supreme Court in the case of Luckenbach Steamship Co. v. United States, 280 U. S. 173, 50 S. Ct. 148, 74 L. Ed. 356, decided January 6, 1930, appellant on May 15, 1930, addressed a letter to the Comptroller General containing, among other statements, the following: "Inasmuch as Canal Zone ports have been held to be foreign ports we are submitting our claim against the Government for $5,043.81, difference between amount paid us for mail carried under domestic rates and what we should have been paid at foreign mail rates, all of which we trust you will find in order."

Of date June 14, 1930, the Comptroller General replied by letter containing, among other statements, the following:

"There appears no authority of law for a reopening of the settled accounts based upon the holding of the decision cited. It is a well settled principle of law that a subsequent decision of a court does not require the accounting officers of the Government to reopen accounts settled in accordance with the rule of practice in effect prior to the date such decision was rendered. 6 Comp. Dec. 91; 13 Id. 53. See, also, 12 Op. Attys. Gen. 386, in which there was involved practically the same question as here presented. * * *

"In connection with the present case, there has been submitted no newly discovered material evidence not taken into consideration at the time the settlement of the claims was made, nor is there alleged any

error in calculation in such settlement as made by this office under the rules or practice then prevailing with respect to the settlement of such claims, and accordingly, it must be held that a reopening of such settled accounts is not authorized."

Of date July 11, 1930, appellant's attorney replied to the letter of the Comptroller General. In the letter of reply, among other statements, appears the following:

"I am in accord with the statement made in your letter of June 14, that a subsequent decision of a court does not require the reopening of accounts when such decision changes or modifies a rule of law.

"The decision of the United States Supreme Court in the case of Luckenbach Steamship Co. v. United States, 280 U. S. 173,[1] determined that the Canal Zone ports were in fact foreign ports. This decision of the Supreme Court was not a modification of a rule of law, but the determination of a fact. It is therefore clear that the General Accounting Office was not in possession of the true facts. A mistake of law occurs where the facts are known but the legal consequences are not known. In my opinion there is no rule of law involved here, but the determination of a fact."

To the letter last referred to, the Comptroller General of date August 4, 1930, replied, and from which letter we quote the following excerpts:

"It may be stated in the first place that the decision of the Supreme Court herein cited does not determine, as assumed in your letter, 'that the Canal Zone ports were in fact foreign ports.' The first paragraph of the syllabus of the decision says:

" '1. Ports in the Canal Zone are to be regarded as foreign ports within the meaning of Rev. Stats. § 4009, U. S. Code, title 39, sec. 654 [39 USCA § 654] dealing with the compensation allowable for transportation of mail, by United States ships, between the United States and "any foreign port." P. 177.'

"In other words, the question involved in the Luckenbach case and in the decision of this office * * * was not a question of fact as to whether the ports in the Canal Zone were foreign or domestic ports of the United States, but rather a question of law as to whether ports in the Canal Zone should be considered as foreign ports under section 4009, Revised Statutes, for the purpose of compensation for the transportation of mails

under that section. * * * This question of law was decided by this office in 1925 in the negative, and payment of compensation for mail transportation prior to the Act of July 3, 1926, 44 Stat. 500, was made accordingly. The decision in the Luckenbach case takes the opposite view and, therefore, must be considered as a modification of a rule of law, and, as stated in my decision of June 14, 1930, constitutes no authority for a reopening of settled accounts."

■ The law governing a case of this character is stated in the opinion of the Supreme Court by Mr. Justice Brandeis in St. Louis, B. & M. Ry. v. United States, 268 U. S. 169, 174, 45 S. Ct. 472, 474, 69 L. Ed. 899, as follows: "No action of these officials can bar the right of a claimant to have the Court of Claims determine whether he is entitled to recover under a contract with the government. [Citing authorities.] The right to invoke the legal remedy may be lost by the claimant's failure to invoke it within the statutory period of limitations. But the substantive right to recover an amount confessedly due can be lost only through some act or omission on the part of the claimant which, under the rules of the common law as applied by this court to claims against the government, discharges the cause of action. Acquiescence by the claimant in the payment by the government of a smaller amount than is due will ordinarily effect the discharge. Acquiescence can be established by showing conduct before the payment which might have led the government to believe that the amount allowed was all that was claimed, or that such amount, if paid, would be received in full satisfaction of the claim. Acquiescence can, also, be established by showing conduct after the payment which might have led the government to believe that the amount actually received was accepted in full satisfaction of the original claim. But to constitute acquiescence within the meaning of this rule, something more than acceptance of the smaller sum without protest must be shown. There must have been some conduct on the part of the creditor akin to abandonment or waiver or from which an estoppel might arise."

■ The evidence submitted in this case establishes such acquiescence upon the part of the claimant in the payment by the government of a smaller amount than was legally due as bars a right of recovery. When advised of the ruling of the Comptroller General, which ruling was clearly upon a ques-

---

[1] 50 S. Ct. 148, 74 L. Ed. 356.

tion of law, claimant made no protest or contention that there was error in such ruling. Upon the contrary, the only request made was for "a schedule of these rates"; for advice "in order to estimate the mail revenue," and that the postmasters "separate the revenue accruing from their ports to the Canal Zone * * * the port which takes the foreign rate from the amount which takes the domestic rate." It was not until nearly four years later, following the decision in the Luckenbach Steamship Company Case, supra, that any claim was made for additional payment. This case falls within the rule applied in the following cases: Louisville & N. R. R. v. United States, 267 U. S. 395, 45 S. Ct. 233, 69 L. Ed. 678; New York, N. H. & H. R. R. Co. v. United States, 258 U. S. 32, 42 S. Ct. 209, 66 L. Ed. 448; Oregon-Washington R. R. Co. v. United States, 255 U. S. 339, 41 S. Ct. 329, 65 L. Ed. 667; Western Pacific R. R. Co. v. United States, 255 U. S. 349, 41 S. Ct. 332, 65 L. Ed. 671; United States v. Garlinger, 169 U. S. 316, 18 S. Ct. 364, 42 L. Ed. 762; Central Pacific R. R. Co. v. United States, 164 U. S. 93, 99, 17 S. Ct. 35, 41 L. Ed. 362; Philadelphia & Baltimore Central Railroad Co. v. United States, 103 U. S. 703, 26 L. Ed. 454; White Oak Canal Co. v. United States (C. C. A.) 15 F.(2d) 474.

Judgment affirmed.