**SOUTHERN PACIFIC COMPANY, a corporation of the State of Delaware, Plaintiff,**

v.

**UNITED STATES of America, Defendant (two cases).**

**Civ. A. Nos. 1611, 1621.**

United States District Court
D. Delaware.

July 22, 1960.

See also D. C., 243 F.Supp. 839.

John P. Sinclair, and Henry R. Horsey (Berl, Potter & Anderson), Wilmington, Del., and Robert P. Shaughnessy (Mudge, Stern, Baldwin & Todd), New York City, for plaintiff.

Leonard G. Hagner, U. S. Atty., Wilmington, Del., for defendant.

RODNEY, District Judge.

These two cases involve the same principles of law and substantially the same facts and will be considered together. They both involve claims by an interstate carrier for unpaid freight charges and are brought pursuant to 28 U.S.C. §§ 1346 and 1402.

In Case 1611 Base Materials Co. shipped from Crows Landing, California, some 2,000 packages of fifty pound bags of bobanite oil absorbent consigned to the Receiving Officer, Naval Air Station, Quonset Point, Rhode Island.

In Case 1621 some 288 crates of cantaloupes were shipped from Brawley, California, to the Supply Officer at Naval Supply Center, Norfolk, Virginia.

Both shipments were on uniform straight bills of lading.

The complaint and answer in each case make clear certain salient facts, viz., the nature and weight of the articles shipped, the origin and destination points, the parties to the shipment, receipt of the shipment at the destination by defendant's authorized agent, the amount of the freight charges and that such charges are uncollected. Affidavits show the unsuccessful effort by the plaintiff to collect the freight charges from the shippers.

The difficulty of the case arises from the conceded fact that the bill of lading in Case No. 1611 carried the notation "to be prepaid" and in Case No. 1621 the notation "Total Prepaid".

The defendant contends the plaintiff is estopped because of the representation that the freight charges had been prepaid. The defendant also contends by its answers that the plaintiff had knowledge that the agreed purchase price in the contract for the purchase of the goods included the payment of the freight by the consignor. In answer to interrogatories, however, the defendant in Case 1611 admitted that the stated defenses arose solely from the notation on the bill of lading, "to be prepaid". The answer to interrogatories in 1621 was somewhat different and will be later considered.

In Case 1611 the plaintiff has moved for a summary judgment, or in the alternative, to strike the pleas of estoppel. In 1621 the motion is to strike the pleas of estoppel.

A somewhat anomalous situation is here presented. The plaintiff contends that where freight charges have not been paid and the goods are accepted by the consignee, such consignee is bound by the acceptance to pay the freight. The carrier contends as expressly stated in Chicago, R. I. & P. Ry. Co. v. Central Warehouse Co., 14 F.2d 123, aff. 20 F.2d 828 (8th Cir.):

"At the time the defendant in this case accepted the shipment in question, it became liable for the carrier's lawful charges. The carrier had no power to agree to waive those charges. There was nothing which

it could say or do which would create an estoppel, which would prevent its performing its duty of collecting them."

The anomaly is presented by the Department of Justice of the United States contending for a less stringent construction of the Acts of Congress than may be drawn from decisions of the Supreme Court and other cases.

Material in this case are certain statutory references.

Section 6(7) of the Interstate Commerce Act, 49 U.S.C. § 6(7) provides as set out in the footnote.[1] Section 3(2) of the Act requires the payment of freight as a prerequisite of delivery, and the Elkins Act[2] prohibits concession by any device whatever. Section 7 of the "Contract Terms and Conditions" appearing on the Uniform Bill of Lading states:

"The owner or consignee shall pay the freight and arrearage, if any, and all other lawful charges accruing on said property."

Before considering the holding of the cases it seems material to align the cases into several categories.

Some distinction has been made or attempted between cases on the one hand where the claim of the carrier is for an unpaid portion of the charge in an interstate shipment where an incorrect amount had been quoted to the consignee by the delivering carrier, and cases on the other hand where the entire charge was unpaid or marked "prepaid". An example in this category is Griffin Grocery Co. v. Pennsylvania R.R. Co., 93 Ga.App. 546, 92 S.E.2d 254. It is difficult to see the distinction. Concededly the purpose underlying all of the pertinent Acts of Congress is to prevent discrimination in freight rates by any device whatever, and the amount of the freight charge or whether it involves one or more carriers seems immaterial. It would be just as easy for a carrier by conspiracy or otherwise and in attempting to give an unlawful discrimination, to mark a shipment as "prepaid" when such was not the fact, as to incorrectly state a portion of the tariff had been paid. It was to prevent any possibility that discrimination might be made that the Acts of Congress were passed.

Other cases have considered, as in this case, some mistake of the carrier or incorrect information to the consignee as to the shipment having been prepaid.

Still other cases draw a distinction between a private party as consignee and the United States, itself, as consignee.

Stemming from Pittsburgh C. C. & St. L. R. Co. v. Fink, 250 U.S. 577, 40 S.Ct. 27, 63 L.Ed. 1151, the Supreme Court has consistently maintained that the purpose of the Act (preventing discrimination) required the disapproval of the nonpayment of freight charges by any device. In the last cited case the Court commented on the fact that for the legal charges the carrier had a lien on the goods which the carrier could not waive, and the lien could only be discharged by payment or tender of the freight charges. The Court held that under the Act of Congress the consignee was liable for the balance of the charges for an interstate shipment even though such consignee, upon delivery, had paid a lesser

---

1. "No carrier, unless otherwise provided by this chapter, shall engage or participate in the transportation of passengers or property, as defined in this chapter, unless the rates, fares, and charges upon which the same are transported by said carrier have been filed and published in accordance with the provisions of this chapter; nor shall any carrier charge or demand or collect or receive a greater or less or different compensation for such transportation of passengers or property, or for any service in connection therewith, between the points named in such tariffs than the rates, fares, and charges which are specified in the tariff filed and in effect at the time; nor shall any carrier refund or remit in any manner or by any device any portion of the rates, fares, and charges so specified, nor extend to any shipper or person any privileges or facilities in the transportation of passengers or property, except such as are specified in such tariffs."

2. 49 U.S.C. § 41.

amount but all that was demanded by the carrier. The Fink case has been expressly approved by many cases and especially those listed in the footnote.[3]

The case of Chicago, R. I. & P. Ry. Co. v. Central Warehouse Co., 14 F.2d 123, aff. 20 F.2d 828 (8th Cir.) involved almost the precise facts as here involved. Only the nature of the consignee was different.[4] In the cited case the bill of lading recited that the freight charges had been prepaid when, in fact, they had not been, and that the consignee acted upon the representation of the bill of lading. Both the District Court and Court of Appeals sustained the right of the carrier to collect the correct amount of the freight charge from the consignee.

To the same effect are many cases both from the federal courts [5] and from the state courts.[6] A few cases following Davis v. Akron Feed & Milling Co., 6 Cir., 296 F. 675, hold that a private consignee can invoke the doctrine of estoppel against a carrier and prevent the collection of freight charges.[7]

In the Davis case and in the Georgia case (92 S.E.2d 254), the Courts indicated that the Supreme Court's holding that a consignee was liable for freight charges was not based on any theory other than that the consignee was presumed to have knowledge of the published rate. This clearly has application to the question of estoppel. In United States v. Western Pac. R. Co. (1956), 352 U.S. 59 and in note 20, page 76, 77 S.Ct. 161, at page 171, 1 L.Ed.2d 126, the Court said generally:

"A private shipper may not invoke the defense of estoppel to prevent a carrier from collecting a higher applicable tariff rate than that which may have been actually quoted by the carrier."

The approval of the Davis case by the same Court of Appeals in United States v. Mason & Dixon Lines, 222 F.2d 646 (6th Cir.) is somewhat less than enthusiastic. The Court said:

"This opinion [Davis] has been criticized, but we are not convinced that we should depart from the equitable reasoning of our able and distinguished predecessors. Even if we thought otherwise, there would be adequate reasons and authority for reversing the judgment of the district court on different grounds."

The Court then proceeded to hold that the United States was on a different footing from other consignees.

From a review of all the authorities I am convinced that the plaintiff must prevail unless the fact that the United States was the consignee distinguishes the present cases from the current of authority.

While the consignee in the pending cases was the United States, a consideration of private consignees has been deem-

3. New York Central & H. R. R. Co. v. York & Whitney Co., 256 U.S. 406, 41 S.Ct. 509, 65 L.Ed. 1016; Louisville & Nashville R.R. Co. v. Central Iron Co., 265 U.S. 59, 44 S.Ct. 441, 68 L.Ed. 900.

4. In the cited case the consignee was a private party; here the consignee is the United States.

5. F. Burkhart Mfg. Co. v. Fort Worth & D. C. Ry. Co., 8 Cir., 149 F.2d 909; Western & Atlantic R. Co. v. Underwood, D.C., 281 F. 891; Great Northern Ry. Co. v. Hyder, 279 F. 783.

6. Southern Pac. Co. v. Wheaton Brass Works, 5 N.J. 594, 76 A.2d 890, cert. denied 341 U.S. 904, 71 S.Ct. 614, 95 L.Ed. 1343; New York, N. H. & H. R. Co. v. Lord & Spencer, 273 Mass. 583, 174 N.E. 179; Houston & T. C. R. Co. v. Johnson, Tex.Com.App., 41 S.W.2d 14, 83 A.L.R. 241; Waters v. Pfister & Vogel Leather Co., (1922), 176 Wis. 16, 186 N.W. 173; Chicago & N. W. Ry. Co. v. J. I. Case Plow Works, (1921), 173 Wis. 237, 180 N.W. 846.

7. United States v. Mason & Dixon Lines, 6 Cir., 222 F.2d 646; Cincinnati Northern R. Co. v. Beveridge, D.C., 8 F.2d 372; Houston & T. C. R. Co. v. Lee County Produce Co., D.C., 14 F.2d 145; Griffin Grocery Co. v. Pennsylvania R. R. Co., 93 Ga.App. 546, 92 S.E.2d 254; Southern Pac. Company v. Valley Frosted Foods, 178 Pa.Super. 217, 116 A.2d 70.

ed necessary because, except for United States v. Mason & Dixon Lines, every case cited and relied upon by the defendant was that of a private consignee. Mason & Dixon Lines cited and approved Davis v. Akron Feed & Milling Co. and that in turn was a case of a private consignee.

This, then, brings me to a consideration of whether the fact that the United States was the consignee brings into play entirely different principles from those applicable to a private consignee. The defendant cites and relies upon United States v. Mason & Dixon Lines, 6 Cir., 222 F.2d 646. There the Court said, "In relation to the subject matter, we think the government of the United States stands upon a different footing from that of a private consignee", and held that the government could plead an estoppel against the carrier.

In United States v. Western Pac. Ry. Co., 352 U.S. 59, 76, 77 S.Ct. 161, 171, 1 L.Ed.2d 126 (1956), the Supreme Court said "Nor, unlike the case of a private shipper, do we think the defense of estoppel is unavailable to the Government."

Both of the cited cases refer to Oregon-Wash. R.R. Co. v. United States, 255 U.S. 339, 41 S.Ct. 329, 65 L.Ed. 677, and Western Pac. R.R. Co. v. United States, 255 U.S. 349, 41 S.Ct. 332, 65 L.Ed. 671, both decided March 7, 1921. These cases did not discuss at length the purposes of the transportation act or any difference between a private consignee and the government as consignee but held that a railroad company subject to "land grant" deductions could not recover additional charges after an acquiescence continuing over many years.

Both the Mason & Dixon Line case and Western Pac. Ry. Co. v. United States cite 49 U.S.C. § 22 as the basis for the distinction between a private consignee and the government as consignee. The apparent basis for this conclusion seems to be that a private consignee is bound by the established and published tariff of which it must take notice but that 49 U.S.C. § 22 allows reduced rates or free transportation to the government, and the government therefore is not bound by the published tariff.

Had not such eminent authority found in Section 22 the indicated result, I should have been tempted to conclude otherwise.

The Supreme Court in St. Louis B. & M. Ry. Co. v. United States, 268 U.S. 169, 173, 45 S.Ct. 472, 473, 69 L.Ed. 899, said:

"In respect to furnishing transportation, a railroad ordinarily bears to the government the same relation that it does to a private person using its facilities."

Section 22 of 49 U.S.C. does not refer to the government alone. In certain instances it removes culpability from a carrier in giving certain preferences. It permits a carrier to allow certain preferential treatment by reduced rate or free transportation to a large list of beneficiaries. This list includes not only the federal government but all state and municipal governments, all charitable corporations, fairs or expositions for exhibit, all ministers of religion, and a number of other instrumentalities.

Section 6(7) of 49 U.S.C. provides that no carrier shall participate in the carriage of goods without publication of a tariff. I would be inclined to view Section 22 as permitting a special tariff or rate or arrangement as applicable to those parties mentioned therein and such tariff or agreement to be established in accordance with Section 6(7).

In the present case there is before me no question of any special tariff or any special arrangement. The goods were shipped on a uniform straight bill of lading applicable to all ordinary business transactions. In such case my associate Judge Leahy in Southern Pac. Co. v. United States, D.C., 93 F.Supp. 411, held the government liable for the charges. The Court commented on the fact that the government could have used a special bill of lading but did not do so. That case was affirmed in 3 Cir., 192 F.2d 438. The cited case did not involve a plea of estoppel.

In both of the present cases the government has pleaded an estoppel and the plaintiff has moved to strike those pleas. In view of the language of the Supreme Court, "Nor, unlike the case of a private shipper, do we think the defense of estoppel is unavailable to the Government", I cannot strike the pleas of estoppel unless, indeed, there be a distinction between the government as a shipper and as a consignee. This distinction is not apparent to me and especially since the Supreme Court in Western Pac. R. R. Co. v. United States,[8] held that Section 22 permitting reduced rates to the United States was applicable to goods transported for the United States.

■■ In the two pending cases the pleas of estoppel were the same. In answer to an interrogatory as to whether the estoppel defenses were based solely on the words inserted in the bill of lading, the answer in No. 1611 was that the pleas were so based. In No. 1621, however, the defendant in addition to the words on the bill of lading and in answer to the interrogatory, included as a basis the following statement:

> "The Association of American Railroads Mandatory Accounting Rule provides that any freight charges on goods consigned to the U.S. Government, on a commercial bill of lading shall be prepaid, thereby raising the inference that the carrier knew or should have known that the consignor was solely liable for the freight charges and that by extending the consignor credit for such charges plaintiff assumed the risk of any lost revenue."

The two cases have, by request, been heard together. The shipments were made at approximately the same time; the same counsel appeared in each case; identical briefs were filed by the parties and no distinction made between them. The cases must be considered together.

The motions to strike the pleas of estoppel in both cases must be denied. Whether sufficient facts can be established to sustain the pleas of estoppel must be considered at a later stage.

Since the language of the Supreme Court prevents the striking of the pleas of estoppel, the motion in No. 1611 for a summary judgment must also be denied.

Appropriate orders may be submitted.

---

8. 255 U.S. 349, 41 S.Ct. 332, 65 L.Ed. 671.