The plaintiff, a railroad Company, operating between Chicago, Illinois, and New York City, N.Y., brought this action against defendants, filing its petition on August 24, 1914. By a number of counts it alleges that the defendants shipped over its lines carloads of produce, several of which were shipped from Chicago, and one from the city of Springfield, Mo. That the rate charged for such freight was that established by law for the carriage of this character of merchandise from the initial points to points of destination. *Page 440 
Three of the items in the petition are for the full amount of the freight on the cars, one item being for an unpaid balance of $100 on another car, and the final item being for $2 demurrage charge. The total amount for which judgment was demanded under all the counts was $551. 23, for which plaintiff prays judgment with interest and costs.
An amended petition was filed on the 27th day of May 1918. To this amended petition defendants filed an answer setting up a general denial and also setting up a counterclaim for damages claimed on account of negligence and delay in a shipment of produce growing out of other transactions between the parties in the year 1912. This amended answer was filed in February, 1919. A demurrer to the counterclaim set up was filed and passed on in the month of February at the January Term, 1919, which demurrer was sustained. Whereupon, the defendants again filed an amended answer which contained a general denial and which set up the following statement as a defense:
"Further answering, they say that on the — day of March, 1912, they instructed the plaintiff to deliver all cars consigned to them at New York between that date and April 6, 1912, to James Butler, 390 Wn. St., New York, upon the payment of all freight charges against each and every car by the said James Butler, which the said Butler agreed to pay and represented to defendants he had paid, and that the plaintiff agreed to collect said charges from the said Butler before said cars were delivered to him: that the plaintiff delivered said cars for which this action is brought described in Item 1, 2 and 4 to the said Butler and defendants afterwards believing that said Butler had paid said freight had an accounting and settlement with the said Butler and in said settlement paid him the amount of freight charges sued for by plaintiff in this action.
Wherefore, defendants say they owe plaintiff nothing." *Page 441 
The cause was then tried at the May Term, 1919, before a jury, and under the instructions given by the court a verdict was rendered in plaintiff's favor, which forms the basis of the judgment appealed from in this case.
No term bill of exceptions was filed at the January Term, 1919, which eliminates any question of error as to the action of the trial court in sustaining plaintiff's demurrer to the original counterclaim filed by defendants, and appellant makes no serious contention that the origial counterclaim filed in the suit is in any way before us on this appeal.
154a The whole question comes down to the defense set up in the answer, that part of which is herein set out, which is that the defendants made an agreement with plaintiffs authorized agent that the plaintiff would collect the freight from Butler 
Company of New York, the people to whom defendants had sold the cars of produce. The undisputed facts show that defendants were the owners of this produce; that it was shipped to New York, and defendants named in the bill of lading as the consignees; that the defendants occupied the position of owners, consignors and consignees concerning these shipments. It is true, that the bill of lading of the Chicago shipments was made by Armour Company, but Armour Company were agents for the defendants and acted for them. As we are considering a demurrer to defendants' special answer, all the testimony will to taken as true which tends to sustain such answer, and that being so, we must treat the case as though the goods were shipped from initial points by the consignors to themselves in the city of New York; that while the cars were in transit the defendants sold the cars to Butler 
Company with the understanding and agreement that Butler 
Company would pay the freight due to the railroad company for the shipment; that the defendants and plaintiff agreed that these cars would be turned over to Butler Company and that *Page 442 
plaintiff would collect its freight from Butler Company when they were delivered. The evidence shows that through error the cars were delivered to Butler Company without payment of any of the freight on several of the cars, and because of a mistake in computing the amount they failed to pay within $100 of the amount due on one car, and it is the claim of plaintiff now that irrespective of this agreement, or irrespective of any question of estoppel, the tariff rates are fixed, and under the Elkins Act the consignor is primarily and always liable for the payment of this freight to the railroad company and that the railroad can collect from the consignor in any case where it has not received its money for freight.
The defense is, as shown, that it did contract with the plaintiff that plaintiff would collect this freight from Butler 
Company, and that plaintiff agreed to get its payment in that way; that defendants have made a settlement with Butler Company and can no longer hold them for this freight. With these facts proven, the court instructed the jury that the freight rate on shipments from one State is fixed by the tariffs filed with the Interstate Commerce Commission under authority of the United States Statutes, and that if through mistake, or any other cause, a lesser rate is collected by the carrier than the rate fixed by the Interstate Commerce Commission, then the difference between the rate charged and collected and the legal rate is, nevertheless, still due and owing from the consignor to the carrier, and the carrier is legally entitled to recover the difference from the consignor.
The second instruction is practically the same, with the additional feature that the carrier can collect the same regardless of any agreement or understanding that defendants may have had with any third person. The giving of these instructions on behalf of plaintiff is assigned as error, and likewise error is assigned for refusal to give defendants' instructions which based a verdict *Page 443 
in its favor on the ground that if they found that defendants and plaintiff had agreed that the freight charges should be collected from Butler Company, then regardless of whether they had been paid by Butler Company, or not, the defendants would no longer be liable for this freight.
It is the settled law concerning interstate shipments that the decisions on federal laws by federal courts are binding upon the state courts. Any number of cases hold that the defense of estoppel cannot be set up in a suit by a consignor for unpaid freight. We have recently had this question before us in the case of Bush v. Keystone Driller Co., 199 Mo. App. 152, 199 S.W. 597, where the federal court cases are reviewed. [See Yazoo M.V.R. v. Picher Lead Co., 190 S.W. 387.]
Before this, we have not had a case where the question of whether a consignor could contract with a carrier for someone else to pay the freight, and in the event that it was not paid by virtue of such contract, escape his liability for same. We, however, find that this exact question was decided by a federal court in the case of Wells, Fargo Co. v. Cuneo, 241 F. 727, where the following language is exactly in point and applicable to the position taken by appellant here, which will be found on page 729:
"Demurrer to Separate Defense. Briefly summarized, this defense sets forth that the shipment was `delivered by the defendant and accepted by the plaintiff under a lawful agreement that the plaintiff would collect its lawful charges for transporting the same from the consignees thereof and from no other person.' This defense cannot avail defendant under Atlas S.S. Co. v. Columbian Land Co., 102 F. 358, 42 C.C.A. 398; Portland Flouring Mills Co. v. British Foreign Marine Ins. Co., 130 F. 860, 65 C.C.A. 344; Jobbitt v. Goundry, 29 Barb. (N.Y.) 509; Central Railroad of New Jersey v. McCartney, 68 N.J. Law, 165, 52 A. 576; and other cases unnecessary to cite. *Page 444 
"The rule is that the consgnor is the party primarily liable for the payment of the freight, and this rule is enforced, independent of the question whether the consignor is the owner, and regardless of the question whether the payment of freight is secured by a lien on the cargo, because the consignor is the party for whom the service is performed." [Portland Flouring Mills Co. v. British Foreign Marine Ins. Co., supra.]
"It is urged, however, that the defense is good because, interalia, the complaint alleges merely that the consignee has refused to pay, and does not allege that the charges cannot be collected from the consignee. This refusal, if anything, makes the plaintiff's case stronger. It was the duty of plaintiff, as a carrier, in interstate commerce, to collect the charges, and, if the consignee will not pay, plaintiff is not called upon to sue the consignee, but may look to the shipper."
We must, therefore, hold that the instructions given by the trial court are in accord with the holding of the federal court on this question, and are therefore, binding upon all state courts.
It is further urged that the judgment is excessive as to interest. The prayer of the petition is for a certain amount of money together with interest and costs. The judgment given is not for an amount in excess of the freight shown to be due, plus six per cent (6%) interest from the date of filing the suit until the date of judgment. It is true, there is no proof of demand, but it has been held in Trimble v. K.C.P. G.R. Co., 180 Mo. 574, 79 S.W. 678, that the filing of suit is sufficient demand to start the running of simple interest. Again, with reference to the interest charge, there is nowhere in the motion for new trial which was filed any charge that the judgment was excessive, nor is there any assignment of error to that effect.
The cases of Chicago Northwestern Ry. Co. v. Tecktonius Mfg. Co., 262 F. 715, and Wells, Fargo Co. v. Cuneo, 241 F. 723, are inapplicable here so far *Page 445 
as any question of right to counterclaim is concerned, because that question was not preserved in the record in this case for consideration.
Plaintiff's instructions do fix the property as being shipped from Missouri to New York, while the evidence shows that some of the cars were shipped from Chicago, and only from Missouri. The evidence clearly shows the whole transaction concerning the transportation of these cars, and the omission to include in the instruction the cars that were shipped from the State of Illinois could have in no way misled the jury in arriving at the verdict returned.
As we read the federal court cases on this proposition, they hold the consignor primarily liable for the payment of all the freight for the shipment made which has been fixed under the terms of the law and Interstate Commerce Commission, and that when the carrier has failed to procure the payment of that freight, it can recover it from the consignor and its suit will not be defeated on account of estoppel or contract. The rates are fixed and certain, and are not subject to be contracted away between the parties nor defeated on the question of estoppel. The basis of this holding is to eliminate the possibility of discrimination. Such rule is wholesome in that respect and will, and often does, work a hardship in the individual case, where the consignor and those with whom he is dealing have changed their position, acting upon the theory and belief that the freight has been paid.
We find that the judgment in this case is in accord with the law as declared by the courts on this question, and it must be affirmed.
Cox, P.J., and Bradley, J., concur. *Page 446