## CINCINNATI NORTHERN R. CO. v. BEVERIDGE et al.

(District Court, E. D. Virginia. April Term, 1925, at Richmond.)

No. 669.

Carriers ⬛194—Neither person presenting bill of lading nor one receiving shipment is liable for transportation charges, where prepaid bill of lading issued to shipper on carrier's credit list.

Where carload of hay was consigned to shipper's order, and prepaid bill of lading issued to shipper, who was on railroad's credit list, held, neither person presenting bill of lading nor one to whom hay was sold and who received actual delivery was liable for transportation charges on failure of railroad to collect from shipper especially where no action was taken against shipper, who was not shown to be insolvent.

At Law. Action by the Cincinnati Northern Railroad Company against S. T. Beveridge, trading as S. T. Beveridge & Co., and another. Judgment for defendants.

Leake, Leake & Spicer, of Richmond, Va., for plaintiff.

Robert H. Talley and J. Randolph Tucker, both of Richmond, Va., for defendants.

GRONER, District Judge. This is an action brought by the Cincinnati Northern Railroad Company, a corporation of Ohio, against S. T. Beveridge & Co. and Aubrey Hawkins, of Richmond, Va. The purpose of the action is to recover $135.91 transportation charges on a car of baled hay shipped on or about December 20, 1921, by the D. O. Cross Company, of Cincinnati, Ohio, to its own order at Richmond, Va., notify Aubrey Hawkins. By proper stipulation a jury trial was waived and the whole question of law and fact submitted to the court.

The Cross Company was on the railroad company's credit list, and at the time of the shipment received from the railroad company, in duplicate, a prepaid bill of lading. Subsequently, on January 4th, it delivered its bank check to the railroad company for the amount of the freight, but this was later returned unpaid on account of insufficient funds. In the meantime the Cross Company had drawn a draft on Hawkins, a commission merchant at Richmond, attaching a copy of the prepaid bill of lading to the draft, with instructions to Hawkins to "handle in the usual manner for our account." Hawkins sold the hay to Beveridge & Co. on December 30th, and received a certified check for the purchase price, paid the draft and delivered the bill of lading to the railroad company, together with an order authorizing the delivery of the hay to Beveridge & Co., who duly received the same from the railroad company on or about December 31st. The dishonored check given by the Cross Company has never been made good, nor the transportation charges paid, and the single question is whether the railroad company is now entitled to collect the same from Hawkins and Beveridge, or either of them.

From what has been already said, it will be observed that neither of the defendants was either consignor or consignee of the shipment in question, and that, while Hawkins surrendered the bill of lading, Beveridge actually received delivery. The position of the railroad company is that, notwithstanding the representation made by it to the effect that the transportation charges had been paid in full, the person receiving the freight is not relieved from liability to

pay the same where it subsequently develops that the representation so made was not true, and it relies upon the cases of Great Northern Ry. Co. v. Hyder (D. C.) 279 F. 783, and Western & Atlantic R. Co. v. Underwood (D. C.) 281 F. 891.

In the Hyder Case it was said that a consignee, not the owner of the goods shipped, but who accepts them on the carrier's mistaken representation that the freight has been prepaid, is bound to pay the freight, notwithstanding he has not agreed with either shipper or carrier to do so.

In the Underwood Case, a consignee of an interstate shipment was held liable for the transportation charges on the shipment delivered to him on a straight bill of lading reciting that the freight had been prepaid, where it was afterwards discovered that the freight charges had not in fact been paid.

With great deference to the opinions of the two distinguished judges by whom the cases last mentioned were decided, I am constrained to hold differently. Undoubtedly, a consignee of an interstate shipment is not relieved of the payment of the full amount of freight charges, as determined by the published tariffs, regardless of mistakes or misrepresentations by the railroad company in demanding a less amount, and this is so because in the acceptance of the shipment he impliedly agrees to pay the full legal charges, and he is presumed, by reason of the published tariff, to have knowledge of the correct rate; so, where a consignee accepts a shipment and pays the charges then exacted by the railroad company, and it is later ascertained that the charges collected were incorrect and that a larger amount is due, he may be compelled to pay the correct amount. The present is an entirely different case. Here the amount of the freight is not questioned, and here neither of the defendants either expressly or, in my view of the law, impliedly agreed to pay any transportation charges, but, on the contrary, acquired title and received delivery of the shipment upon the express understanding that all such charges had been paid. It was under such conditions that the defendant Beveridge became owner of the hay. In a nearly similar case, Davis, Director General, v. Akron Company, 296 F. 675, the Circuit Court of Appeals, Sixth Circuit, held against the railroad company, saying:

"The consignee in this case had no knowledge, nor had it equal means with the railway company of acquiring knowledge, that the freight from Kansas City to Chicago had not been paid. No circumstance whatever is suggested in the agreed statement of facts that would put the consignee upon inquiry. The railway company knew, or ought to have known, that this freight was not paid, and, when it expressly stated that it had been paid, the consignee relied upon that representation, instead of refusing to accept the consignment until it had made full inquiry with reference to that fact, which inquiry would involve, not only delay, but expense, including demurrage. Nor had the consignee any more reliable source of information than the railway company itself. * * *

"If the matter were one wholly between the carrier and the consignee, there would be no question that the carrier's representation would estop it from demanding further payment of freight. While the statute requiring every shipper and consignee of freight to pay the full published scheduled rate is a salutary one for the protection of the public, nevertheless, in construing and enforcing this statute, courts should not wholly ignore private rights."

In the instant case the railroad company had its remedy against the shipper—the owner of the hay. It was bound to pay the transportation charges, as consignor and consignee, without regard to anything else than the promise which the law implies from these circumstances. In addition, however, there was here an express promise to pay, and the railroad company, on the faith of that promise, issued its prepaid bill of lading. As it turned out, it had improvidently extended credit; and while its mistake, inadvertence, or honest agreement are unavailing in discharge of its obligation under the law to collect the full transportation charges, and until delivery of the freight it had a lien for these charges, the obligation thus imposed does not go to the extent of requiring payment by a purchaser of the goods at destination who, relying upon the railroad company's representation of payment, accepts the same, for to do so would be to make a contract for him which he himself had not made.

An additional reason justifying a judgment for the defendants in this case arises out of the fact that neither in the pleadings nor in the proof is it shown that any effort has been made by the railroad company to collect the freight charges due in this case from the shipper—the owner of the goods—nor is it shown that this is impossible because of its insolvency. See L. & N. R. R. v. Central Iron Co., 265 U. S. 59, 44 S. Ct. 441, 68 L. Ed. 900.