NEW YORK, NEW HAVEN AND HARTFORD RAILROAD
COMPANY *vs.* LORD & SPENCER, INC.

Suffolk.    November 3, 1930. — January 5, 1931.

Present: RUGG, C.J., PIERCE, SANDERSON, & FIELD, JJ.

*Carrier*, Interstate: freight.  *Interstate Commerce.  Estoppel.*

Although the agent of the final carrier of goods being transported in
1925 in interstate commerce to Boston upon a waybill issued by the
initial carrier requiring freight to be collected on delivery, issued a
new waybill and by mistake made a note thereon that all the freight
thereon except that for the last carrier had been prepaid, and, upon
inquiry made by the consignee before he paid the freight for the last
carrier and took the goods, stated that all other freight charges had
been prepaid;  and although the consignee then took the goods, dis-
posed of them and settled with a principal for whom he was acting,
relying on the statements of the final carrier's agent, nevertheless, by
reason of §§ 2, 3 (2) of 24 U. S. Sts. at Large, 379, 380, as amended
by 41 U. S. Sts. at Large, 479, such final carrier, upon discovering its
mistake, was entitled to maintain an action against the consignee for
the unpaid freight.

CONTRACT for freight.  Writ in the Municipal Court of
the City of Boston dated June 25, 1928.

On removal to the Superior Court, the action was heard
by *F. T. Hammond*, J., upon an agreed statement of facts.
Material facts are stated in the opinion.  The judge found
for the plaintiff in the sum of $510.62 and reported the
action for determination by this court.

*J. Cavanagh*, for the defendant, submitted a brief.

*R. Wait*, for the plaintiff.

PIERCE, J.  This is an action of contract originally
brought by the Lehigh Valley Railroad Company, but
through an amendment to the writ prosecuted by the
New York, New Haven and Hartford Railroad Company,
to recover the sum of $510.62 for unpaid freight on two
carloads of tomatoes shipped on or about June 18, 1925,
from Hazelhurst, Mississippi, by mesne diversions to Bos-
ton, in this Commonwealth, where they were delivered to

the defendant. A judge of the Superior Court, without a jury, heard the parties upon an agreed statement of facts, found for the plaintiff in the sum of $510.62 with interest from July 1, 1925, and reported the case to this court.

The statement of facts discloses that on or about June 18, 1925, two carloads of tomatoes were shipped from Hazelhurst, Mississippi, one consigned to the shipper at Mounds, Illinois, by the Illinois Central Railroad Company, a common carrier engaged in interstate commerce, the other consigned to the shipper at Indianapolis, Indiana, by said Illinois Central Railroad Company. This railroad company issued a bill of lading upon each shipment, and undertook and commenced the carriage of the tomatoes in accordance with its terms. While in transit both cars were diverted and reconsigned to one Norman, at Jersey City, and, on their arrival at Jersey City, were again diverted and reconsigned to the defendant at Boston. A freight waybill was issued upon each car, and both waybills showed that the shipments were made collect. Upon the reconsignment of the two cars to the defendant the plaintiff's freight agent issued a substitute waybill on each car. The freight agent at Jersey City by accident and mistake made a notation on the waybills to the effect that freight charges had been prepaid on each car and that only a certain amount of freight charges from Jersey City to Boston was due. Before paying the freight bills presented, the defendant inquired of the plaintiff as to the correctness of the bill, and asked for a confirmation of the fact that the freight charges from Hazelhurst to Jersey City on each car had been prepaid. It was informed by the plaintiff that this was the fact, and that the freight charges from Jersey City to Boston only were due. Upon the second car in addition to freight charges there was a charge for refrigeration from Cleveland to Boston. When the plaintiff's agent at Jersey City issued the substitute waybills above referred to, he also issued a substitute waybill in place of one issued by the New York Central Railroad Company. By mistake and inadvertence he noted on the third substitute waybill that $55 had been prepaid

on account of that charge and that the defendant was required to pay $5 — the balance unpaid on the refrigeration charge of $60. Thereafter the mistakes above referred to were discovered and the plaintiff made a demand upon the defendant for payment of the freight and refrigeration charges which were unpaid. This demand was made after the defendant had disposed of the tomatoes and had accounted to its principal.

The pertinent provisions of § 2 of the interstate commerce act (24 U. S. Sts. at Large, 379, as amended by 41 U. S. Sts. at Large, 479, § 404) are as follows: ". . . if any common carrier subject to the provisions of this Act shall, directly or indirectly, by any special rate, rebate, drawback, or other device, charge, demand, collect, or receive from any person or persons a greater or less compensation for any service rendered, or to be rendered, in the transportation of passengers or property or the transmission of intelligence, subject to the provisions of this Act, than it charges, demands, collects, or receives from any other person or persons for doing for him or them a like and contemporaneous service in the transportation or transmission of a like kind of traffic or message under substantially similar circumstances and conditions, such common carrier shall be deemed guilty of unjust discrimination, which is hereby prohibited and declared to be unlawful." Section 3 (2), as amended by 41 U. S. Sts. at Large, 479, § 405, reads: " . . . no carrier by railroad subject to the provisions of this Act shall deliver or relinquish possession at destination of any freight transported by it until all tariff rates and charges thereon have been paid . . ." It is to be noted in passing that § 3 (2), *supra,* was amended by act of March 4, 1927, 44 U. S. Sts. at Large, Part 2, 1447, to permit consignees other than the shippers, as here, to escape liability for freight upon giving notice of the fact of their agency and of the absence of beneficial interest. It is to be further noted that this amendment was after the instant cause of action had arisen and that the specified notice was not given.

The defendant concedes that where error or misrepre-

sentation is made by the carrier or any other person as to the lawful rate of carriage or as to the amount due as the lawful rate, there can be no estoppel against the carrier if it is afterwards discovered that such rate has not been collected.  24 U. S. Sts. at Large, 379, 380, as amended by 41 U. S. Sts. at Large, 479.  *Pittsburgh, Cincinnati, Chicago & St. Louis Railway* v. *Fink,* 250 U. S. 577.  *New York Central & Hudson River Railroad* v. *York & Whitney Co.* 256 U. S. 406.  It further concedes that there is no question as to what the through lawful rate was from Hazelhurst to Boston and that it was open to the defendant equally with the plaintiff to ascertain what that rate was.  It impliedly concedes that under the rule in *Pittsburgh, Cincinnati, Chicago & St. Louis Railway* v. *Fink, supra,* " if a shipment is accepted, the consignee becomes liable, as a matter of law, for the full amount of the freight charges, whether they are demanded at the time of delivery, or not until later." *Louisville & Nashville Railroad* v. *Central Iron & Coal Co.* 265 U. S. 59, 70.  The defendant, however, contends that in the case at bar it is not a question of the lawful rate or any mistake as to that rate, but whether the carriers are estopped to recover of the defendant the unpaid freight charges after having asserted in answer to the defendant's inquiry that payment had been made of such unpaid charges of the lawful rate to Jersey City, and that the only amount due was the lawful rate from Jersey City to Boston which the defendant paid on demand.  The defendant in support of its contention relies upon *American Express Co.* v. *Sweeney,* 283 Fed. Rep. 691, *Cincinnati Northern Railroad* v. *Beveridge,* 8 Fed. Rep. (2d) 372, *Spencer Kellogg & Sons, Inc.* v. *United States,* 20 Fed. Rep. (2d) 459, and more particularly upon the very similar case of *Davis* v. *Akron Feed & Milling Co.* 296 Fed. Rep. 675, where it was said at page 678, " While the question of legal liability is not free from doubt, the equities are clearly with the consignee, and we are not impressed that the public interest demands such construction of the law as would make the consignee suffer a loss due to the fault, negligence, and

misrepresentations of the carrier." See *Main Island Creek Coal Co.* v. *Chesapeake & Ohio Railway,* 23 Fed. Rep. (2d) 248, where the same court later said at page 250, "no act of the carrier can estop it from enforcing payment of the full amount of the freight charges by the person liable." See also *Louisville & Nashville Railroad* v. *Central Iron & Coal Co.* 265 U. S. 59; *Great Northern Railway* v. *Hyder,* 279 Fed. Rep. 783; *Western & Atlantic Railroad* v. *Underwood,* 281 Fed. Rep. 891; *Central Warehouse Co.* v. *Chicago, Rock Island & Pacific Railway,* 20 Fed. Rep. (2d) 828. We think there is nothing in the facts of the instant case by way of fraud or estoppel which distinguishes the case from *Pittsburgh, Cincinnati, Chicago & St. Louis Railway* v. *Fink, supra,* or from *United States* v. *P. Koenig Coal Co.* 270 U. S. 512, and are of opinion that the interposed defence of the defendant if sustained would by indirection permit the inequality which the statute was designed to avoid. The ruling of the Superior Court was in all respects right. It follows in accordance with the terms of the report that judgment is to be entered for the plaintiff for the sum of $510.62 with interest from July 1, 1925.

*So ordered.*