PENNSYLVANIA RAILROAD COMPANY, Appellant, *v.* L. N. WHITE & Co., INC., Respondent.

First Department, October 28, 1952.

*Joseph P. Allen* of counsel (*F. Sherwood Alexander* with him on the brief; *Conboy, Hewitt, O'Brien & Boardman,* attorneys), for appellant.

*Seymour Stone* of counsel (*Philip Novick* with him on the brief; *Seymour Stone,* attorney), for respondent.

*Per Curiam.* Plaintiff's case established that defendant accepted the shipments from plaintiff, the carrier, picked up the goods and exercised dominion over them on presentation of the bills of lading and that a balance of unpaid freight charges on the two cars in question was later ascertained by the carrier to be due and unpaid. Defendant admitted that storage charges

were due in the sum of $36.96 and the Municipal Court gave judgment for plaintiff in that amount but dismissed the balance of the complaint for the freight charges "without prejudice." The Appellate Term affirmed, one Justice dissenting, and granted leave to appeal to this court.

Defendant rested at the close of plaintiff's case and presented no evidence but contended that it had acquired the goods relying on the bills of lading that were marked "prepaid" and therefore that defendant was not liable for the balance of unpaid freight charges; defendant also claimed that the shipper was the primary obligor and the carrier would have to prove inability to collect from the shipper before proceeding against defendant.

While a short Statute of Limitation was pleaded, that issue is not presented in the briefs on appeal.

The claim that defendant was not the original shipper is not controlling. Defendant's obligation to pay the charges arose when it accepted the goods; in the state of facts disclosed, its title to the goods was the same as that of consignee; whatever obligations were imposed upon the original party to the contract of shipping were assumed by defendant when it accepted the bills of lading and took possession of the goods as owner. Section 7 of the bills of lading contains the following language: "The owner or consignee shall pay the freight and average, if any, and all other lawful charges accruing on said property * * * *."

There is no provision that if the bill of lading is marked "prepaid" the consignee or owner may escape liability for the lawful freight charges although he accepts the freight shipment. In the light of the proofs in plaintiff's case and defendant's silence with regard to its true relation with the consignor and the entire transaction in question, defendant must be deemed the owner and equivalent to the consignee (see *Erie R. R. Co.* v. *Rosenstein, Inc.*, 249 N. Y. 241, 244, 245).

Doubtless the hardship on defendant in relying on the stamp "prepaid" on the bill of lading when accepting the goods and the failure of plaintiff, the carrier, to demand the additional freight at that time, influenced the Municipal Court and the majority of the Appellate Term in defendant's favor. But the parties are not in equity nor is the case to be decided by application of ordinary common-law principles or by State law. Construction of the bills of lading and application of freight rates adopted by the Interstate Commerce Commission and prescribed by Congress in the public interest for interstate rail shipments, such as the one in question, presents a Federal and not a State

question and we are controlled by Federal law (*Illinois Steel Co.* v. *B. & O. R. Co.*, 320 U. S. 508, 510, 511).

In a recent case, *Southern Pacific Co.* v. *Wheaton Brass Works* (5 N. J. 594, certiorari denied 341 U. S. 904 [1951]), the consignor had misdescribed goods and prepaid freight at a lower rate than that provided in the filed tariffs for the goods actually shipped and the uniform straight bill of lading indicated that freight charges were to be collected from the consignee, but the consignee advised the carrier that it did not wish to accept the goods until it knew whether any shipping charges were payable and being informed that the shipping charges had been fully prepaid, it accepted the goods, paid for the shipment at the full contract price and changed its position in reliance on the representation of prepayment. Eighteen months thereafter, after the goods had been resold, the railroad that had made no effort to collect the balance due from the shipper which was still in business and solvent, demanded payment and later instituted suit against the defendant as consignee for the unpaid freight charges. After a complete review of the pertinent authorities, the majority of the Supreme Court of New Jersey following the rule in the leading case (*Pittsburgh etc. Ry. Co.* v. *Fink,* 250 U. S. 577) held that the transaction in the light of the Interstate Commerce Act amounted to an assumption on the part of the consignee to pay the only legal rate and concluded that the controlling rule in spite of its apparent harshness appears to be that while the shipper has some latitude in limiting his liability by his contractual undertaking (cf. *Illinois Steel Co.* v. *B. & O. R. Co.,* 320 U. S. 508, *supra,* and *L. & N. R. R. Co.* v. *Central Iron Co.,* 265 U. S. 59) if a shipment is accepted, the consignee becomes liable as a matter of law for the full amount of the freight charges. We think the rule here controls and requires reversal insofar as the judgment appealed from denied plaintiff the unpaid balance of the freight charges (*Pittsburgh etc. Ry. Co.* v. *Fink,* 250 U. S. 557, 581, 582, *supra; N. Y. Cent. R. R. Co.* v. *York & Whitney Co.,* 256 U. S. 406, 408; *L. & N. R. R. Co.* v. *Central Iron Co.,* 265 U. S. 59, 70, *supra; Central Warehouse Co.* v. *Chicago, R. I. & P. Ry. Co.,* 20 F. 2d 828). In *L. & N. R. R. Co.* v. *Central Iron Co.* (*supra,* p. 70) the shipper was held not liable and the bill of lading in that case, as in this case, stated that the charges should be paid by the consignee but in concluding the opinion, the Supreme Court (BRANDEIS, J.) said: " For, under the rule of the *Fink Case,* if a shipment is accepted, the consignee becomes liable, as a matter of law, for the full amount of the freight charges, whether

they are demanded at the time of delivery, or not until later. His liability satisfies the requirements of the Interstate Commerce Act.''

In *N. Y. Cent. R. R. Co.* v. *York & Whitney Co.* (265 U. S. 406, 408, *supra*) a commission merchant who had paid the charges of the carrier that were less than the lawful rates was held liable for the balance of the freight irrespective of contract and as a matter of law.

The two cases relied on by defendants (*Davis* v. *Akron Feed & Fuel Co.*, 296 F. 675; *Cincinnati Northern R. Co.* v. *Beveridge*, 8 F. 2d 372) are in conflict with the controlling court rulings.

The question before the court on this record is not one of primary or secondary liability but of liability itself and we think the applicable authorities require us to hold that the liability of the owner or consignee to pay charges became fixed once it accepted the shipments on which charges legally computed under the Interstate Commerce Act were then due; regardless of whether or not the carrier may proceed against the shipper, the carrier on the facts disclosed in this case may proceed against defendant as owner or consignee.

The judgment of affirmance by the Appellate Term and the judgment of the Municipal Court should be modified by reversing that part of the judgment of the Municipal Court dismissing the complaint as to the balance of the freight charges and judgment should be given for appellant in the sum of $694.25, with interest, costs and disbursements. Settle order.

DORE, J. P., COHN, CALLAHAN, VAN VOORHIS and BREITEL, JJ., concur.

Determination of the Appellate Term and the judgment of the Municipal Court unanimously modified by reversing that part of the judgment of the Municipal Court dismissing the complaint as to the balance of the freight charges and judgment is given for appellant in the sum of $694.25, with interest, costs and disbursements. Settle order on notice. [See 281 App. Div. 658.]