AIRBORNE FREIGHT CORP., Appellant, *v.* IRVING TRUST COMPANY, Respondent.

Second Department, December 19, 1966.

*Norman Katz* for appellant.

*Nixon, Mudge, Rose, Guthrie & Alexander* (*Stuart A. Summit* and *John P. Sears* of counsel), for respondent.

HOPKINS, J. Plaintiff, an air carrier, sues to recover freight charges in the sum of $2,240.95. The defendant is the consignee of two shipments of merchandise originating in Japan from Sanwa Mfg. Co., Ltd. The case was presented on a stipulation of facts to the Civil Court, which dismissed the complaint; and that disposition was affirmed by the Appellate Term, which thereafter granted leave to appeal to this court.

The two shipments moved on two bills of lading of similar content. In each the shipper was Sanwa, the consignee was the defendant, the "notify" parties were A & S Trading Co. and Freedman & Slater, Inc., and the destination was New York. Each bill was nonnegotiable and indicated that the freight charges had been prepaid; and each provided that the merchandise had been accepted subject to tariffs in effect at the time of the shipments. One of the rules of plaintiff's tariff stated that the " shipper, consignee and owner of the goods are jointly and severally liable for the payment of, and shall indemnify the forwarder against all unpaid charges, advances and disbursements of the forwarder " and that " no right of the forwarder to collect any of the foregoing shall be in any way affected, lost or prejudiced by reason of the acknowledgment of payment, if not actually paid, or by reason of the delivery of the goods ".

Sanwa was accustomed to receive credit from the plaintiff on its shipments and the practice of the plaintiff was to collect accounts within 60 days from the date of shipment. In fact, the two shipments in litigation were transported by credit extended to Sanwa.

When the shipments arrived in New York, the defendant remitted the sales price of each, including the cost of the freight, to Sanwa, as provided by the contract between Sanwa and the defendant and a letter-of-credit arrangement; and the goods were released to the " notify " parties.

Later it developed that Sanwa did not meet the terms of the credit extended by the plaintiff, that it had no assets and that efforts by the plaintiff to collect the freight charges from Sanwa were unavailing. This suit against the defendant followed.

The question thus before us is whether a consignee of air freight under bills of lading marked " charges prepaid " by the carrier may be held responsible to the carrier for such charges when in fact they were not paid and the consignee has remitted all sums due, including the charges, to the shipper. In effect, the consignee is being called upon to pay the charges twice. The question essentially is which of two parties dealing with a third person shall bear the loss caused by the latter's default.

We must consider the question under Federal law, which governs exclusively in the area of interstate and international commerce (*New York & Honduras Rosario Min. Co.* v. *Riddle Airlines*, 3 A D 2d 457, affd. 4 N Y 2d 755; cf. *Pennsylvania R. R. Co.* v. *White & Co.*, 280 App. Div. 587, affd. 305 N. Y. 801; *New York Cent. R. R. Co.* v. *Federal Sugar Refining Co.*, 235 N. Y. 182). Federal law has strictly enforced the public policy reflected by the Interstate Commerce Act, designed to end the discriminatory practices of carriers in making undercharges to favored shippers, by prohibiting rate variations or rebates (U. S. Code, tit. 49, § 3, subds. [1] and [2]; § 6, subd. [7]).[1] So rigorously has the public policy been effectuated that a mistake of the carrier at the time of shipment in the classifications of goods or the rates adopted in its tariffs has been said not to prevent it from thereafter collecting the full charge from the parties to the shipping transaction (*Pittsburgh, etc. Ry. Co.* v. *Fink*, 250 U. S. 577; *New York Cent. R. R. Co.* v. *York & Whitney Co.*, 256 U. S. 406). "Nor could any act or omission of the carrier (except the running of the Statute of Limitations) estop or preclude it from enforcing payment of the full amount by a person liable therefor" (*Louisville & Nashville R. R.* v. *Central Iron Co.*, 265 U. S. 59, 65, per BRANDEIS, J.; see, generally, Ann. 88 ALR 2d 1375). Our courts have been consistent with the Federal rule in cases where an undercharge has been made by the carrier (*New York Cent. R. R. Co.* v. *Ross Lbr. Co.*, 234 N. Y. 261; *Erie R. R. Co.* v. *H. Rosenstein, Inc.*, 249 N. Y. 241; *Eazor Express* v. *Perlmutter*, 22 A D 2d 49).[2]

Doubtless, the public policy exemplified by the prohibition of rate discriminations and rebates cannot be given complete expression unless undercharges by a carrier are corrected through the collection of the full amount due, whether the undercharges resulted from intentional or unintentional error by the carrier; the force of the public policy cannot be blunted by the state of mind of the carrier. However, in this case, the consignee has paid the full amount of the charge; the mistake of the carrier lies not in its interpretation of its tariff or in the computation of its rates, but rather in its appraisal of the shipper as a good credit risk.

The Federal cases are not in accord whether the carrier may collect from a consignee which has remitted to the shipper the

---

1. A similar policy appears in New York statutes applicable to intrastate commerce (Public Service Law, §§ 31, 32, 33).

2. Williston treats the rule as an outgrowth of the shift from contract law to a liability imposed by statute in the field of freight charges in interstate commerce (1 Williston, Contracts [3d ed.], § 90 BB, pp. 303, 306).

price of the goods, together with all freight charges, in reliance on the statement in the bill of lading that the charges were prepaid. The Circuit Court of Appeals for the Eighth Circuit has held that no estoppel against the carrier could arise, though the consignee had changed its position to its detriment (*Central Warehouse Co.* v. *Chicago, Rock Is. & Pacific Ry. Co.,* 20 F. 2d 828); on the other hand, the Sixth Circuit has held to the contrary (*United States* v. *Mason & Dixon Lines,* 222 F. 2d 646; *Davis* v. *Akron Feed & Milling Co.,* 296 F. 675). Thus, we are free to choose a rational rule unless precedent in this State has already marked the path of decision.

The plaintiff urges that *Pennsylvania R. R. Co.* v. *White & Co.* (280 App. Div. 587, affd. 305 N. Y. 801, *supra*) requires a holding in its favor. We think not. In that case the consignee accepted goods in reliance on bills of lading marked prepaid. Later the carrier found that an undercharge had been made, and sued the consignee for the balance due; whether the shipper was insolvent is not disclosed. The carrier was permitted to recover. We do not find the determination apposite, for the reason that an undercharge is precisely the object which public policy was intended to prevent and no double payment resulted.

Nor do we find that the posture of facts in *New York Cent. R. R. Co.* v. *Federal Sugar Refining Co.* (235 N. Y. 182, *supra*) is similar. There the shipper sent goods on the understanding that the charges would be paid by the consignee; instead, by error of the carrier, the freight was marked as prepaid. The consignee became insolvent. The carrier then sued the shipper for the unpaid charges and recovery was granted. However, again, this was a case of complete nonpayment of the charges and the shipper was not compelled to pay twice.

Other States have held that the public policy enforcing nondiscrimination in freight rates is not offended where in fact the consignee has paid the full charges to the shipper in reliance on a representation by the carrier that the charges have been paid by the shipper, to whom the carrier has given credit (e.g., *Griffin Grocery Co.* v. *Pennsylvania R. R. Co.,* 93 Ga. App. 546; *Southern Pacific Co.* v. *Valley Frosted Foods Co.,* 178 Pa. Super. Ct. 217; *Southern Ry. Co.* v. *Simpkins Co.,* 178 N. C. 273). We think that this construction of the statutory policy should prevail here.

The spirit of uniformity of the application of rates is not violated when in fact the tariff charge has been paid. True, the carrier has failed to receive the payment, but the statute was not aimed to compel payment of the tariff twice, or in every instance to guarantee the carrier against loss. When the plaintiff elected

to transport the goods without immediate payment of its charges and represented that the freight was prepaid, it assumed the risk that the consignee would in reliance on that representation make payment of the charges to the shipper. Or, to put it differently, the exacting purposes of the public policy are satisfied once full payment of the rates is made; and the usual rules relating to the conduct of parties in private transactions then come into play. There is no absolute rule imposing liability on the consignee, even though the bill of lading may so provide; by its conduct the carrier may have made it inequitable and unreasonable that the terms of the bill of lading be strictly enforced.

The defendant was hence entitled to rely on the plaintiff's representation and to carry out its agreement with the shipper; having done so, and having fully paid the freight charges, it could not be liable to the plaintiff for the same charges. A contrary result would distend public policy beyond reasonable limits and create an undue preference for the rights of a carrier. Since even constitutional rights may be lost through the application of the doctrine of estoppel in a private transaction (cf. *Shepherd* v. *Mount Vernon Trust Co.,* 269 N. Y. 234), we see no cogent consideration hindering the use of estoppel in appropriate circumstances against a party claiming the benefit of a statute and public policy in a private transaction (cf. *Lumber Co.* v. *Chicago, Milwaukee, Saint Paul & Pacific R. R. Co.,* 282 U. S. 520; see, also, note, 45 Yale L. J. 142: "Right of Interstate Carrier to Collect Undercharges").

The order of the Appellate Term should be affirmed, with costs.

UGHETTA, Acting P. J., CHRIST, BRENNAN and HILL, JJ., concur.

Order of Appellate Term, Second Judicial Department, dated November 12, 1965, affirmed, with costs.