INTERSTATE MOTOR FREIGHT SYSTEM, INC., Plaintiff-Respondent,

v.

WRIGHT BROKERAGE COMPANY, Defendant-Appellant.

No. KCD 27440.

Missouri Court of Appeals, Kansas City District.

Aug. 2, 1976.

Warren H. Sapp, Kansas City, for defendant-appellant.

Thomas A. Schwindt, Kansas City, for plaintiff-respondent.

Before DIXON, P. J., PRITCHARD, C. J., and WASSERSTROM, J.

WASSERSTROM, Judge.

Plaintiff initiated this case by suit in a magistrate court for freight charges of $924.38 plus interest. From a judgment for defendant, plaintiff appealed to the circuit court. That court reversed and entered judgment for plaintiff, from which defendant now appeals to this court.

The case was submitted on stipulated facts. United Consumer Products Co. shipped certain merchandise from Philadelphia, Pennsylvania, to defendant in Independence, Missouri. Defendant received, accepted and retained the merchandise on November 6, 1969. The freight bill covering that shipment bears a typewritten notation that the total charges had been "prepaid."

In the course of its business defendant arranged for the shipment of these products to various customers of United Consumer, receiving payment for the goods from those customers. Periodically defendant remitted the funds so collected, less its own charges and expenses, to United Consumer, the last such remittance occurring on March 13, 1970. Not until August 13, 1970, did plaintiff advise defendant that the freight charges in question had not been paid by United Consumer. Plaintiff on the latter date made demand on defendant for payment of the freight bill, to which defendant has refused to accede.

Defendant contends that plaintiff made an affirmative written representation of prepayment of the freight charges, that defendant made its remittances to United Consumer in reliance upon that representation, that had the representation not been made or had it been corrected within a reasonable time,[1] defendant could have protected itself by withholding the amount of freight charges from the remittances to United Consumer, but that it is now too late for defendant to so protect itself. Plaintiff rejoins that under 49 U.S.C.A. § 323, defendant is absolutely liable for the freight charges in question because of its status as consignee and acceptance of the goods and that under the non-discriminato-

---

1. Under the I.C.C. Regulations, 49 C.F.R. § 1322.1, the carrier may extend credit to the shipper for only 7 days, excluding Saturdays, Sundays and legal holidays, subject to an extension for an additional 30 days.

ry provisions of 49 U.S.C.A. § 316(d) and § 317(b), plaintiff as an interstate motor carrier cannot waive or be estopped from enforcing that statutory obligation.

■ Before discussing the merits of the issue so joined, a procedural matter raised by plaintiff requires disposition. Plaintiff has moved to dismiss this appeal on the ground that the Points and Authorities portion of defendant's brief as appellant fails to comply with Rule 84.04(d). This objection is justified. However, because of the simplicity of the facts, the sharply defined legal issue presented, and the general public importance of that legal question, strict enforcement of Rule 84.04(d) will be suspended in this particular case.

■ Turning to the merits, federal law controls since the shipment was one in interstate commerce. *City of St. Charles v. Wabash Ry. Co.,* 65 S.W.2d 655, 658 (Mo. App.1933); *Chicago & E. R. Co. v. Lightfoot,* 206 Mo.App. 436, 232 S.W. 176 (1921). On the issue here, the federal authorities stand in some disarray. For a partial collection of the conflicting cases see the Annotation in 88 A.L.R.2d 1375, § 6 at page 1386.

Some cases hold that under the provisions of the Interstate Commerce Act, the consignee becomes absolutely liable upon acceptance of delivery and no defense based upon estoppel or other equitable consideration can be made even though the carrier represented the shipment as being prepaid. The leading case so holding is *Central Warehouse Co. v. Chicago, R. I. & P. Ry. Co.,* 20 F.2d 828 (8th Cir. 1927). Among the numerous cases likewise following that rule, although conceding that it may work a hardship, are *Great Northern Ry. Co. v. Hyder,* 279 F. 783 (D.C.Wash.1922); *Western and Atlantic R. Co. v. Underwood,* 281 F. 891 (D.C.Ga.1922); *Southern Pacific Co. v. United States,* 243 F.Supp. 834 (D.C.Del. 1960); *Chicago & N.W. Ry. Co. v. J. I. Case Plow Works,* 173 Wis. 237, 180 N.W. 846 (1921); *Atlantic Coast Line R. Co. v. Wannamaker Chemical Co.,* 216 S.C. 226, 57 S.E.2d 311 (1950); *New York, N.H. & H. R. Co. v. Lord & Spencer,* 273 Mass. 583, 174

N.E. 179 (1931); *Aero Mayflower Transit Co. v. Rae,* 203 Misc. 801, 118 N.Y.S.2d 895 (1952); *Pennsylvania R. Co. v. L. N. White & Co.,* 280 App.Div. 587, 116 N.Y.S.2d 361, aff'd 305 N.Y. 801, 113 N.E.2d 553 (1953). This line of cases relies heavily upon the result which has been reached in the situation where a carrier in error has billed and accepted a deficient charge which is lower than the applicable tariff. In that situation, the cases uniformly hold that the carrier is entitled to recover the amount of the deficiency against either the consignor or the consignee and that such recovery cannot be barred by estoppel. The leading case so holding is *Pittsburgh, C., C. & St.L. Ry. Co. v. Fink,* 250 U.S. 577, 583, 40 S.Ct. 27, 63 L.Ed. 1151 (1919) in which the United States Supreme Court used the much quoted language that "[e]stoppel could not become the means of successfully avoiding the requirement of the Act as to equal rates, in violation of the provisions of the statute."

On the other hand, there were cases from an early date holding that *Fink* and like decisions relating to freight undercharges do not control in a situation as here presented involving an affirmative representation by the carrier as to prepayment by the consignor. These latter cases proceed on the basis that the reason for a consignee not being permitted to rely on the statement made by the carrier as to the amount of the freight charge, is that the correct amount is covered by published tariffs which are open to all and of which the consignee is conclusively bound to have constructive knowledge. Therefore there is no right in the undercharge cases to rely on the carrier's statement, which is a necessary predicate for a successful defense of estoppel. On the other hand, the matter of "prepayment" is not published for public notice, and the consignee does have a right to rely on the carrier's statement. These cases hold, additionally, that the only concern of the anti-discrimination provisions of the Interstate Commerce Act is to assure that *someone* will be required to pay the full tariff charge, but that the statute has no concern with respect to *who* that payor

shall be. These cases further point out that in the cases where the carrier has represented prepayment and the consignee has made remittance in reliance on that representation, the consignee has not asked for or received any preference; rather (unlike the undercharge cases where the consignee has never paid the whole freight charge due) the consignee has already made full payment once to the consignor and if the carrier be not estopped, then the consignee would be required to make a second and duplicate payment to the carrier. The leading case for the result of allowing a defense of estoppel under these circumstances is *Davis v. Akron Feed and Milling Co.*, 296 F. 675 (6th Cir. 1924).

For many years the *Davis* case was accompanied by only a relatively few other cases, principally: *Southern Ry. Co. v. W. A. Simpkins Co.*, 178 N.C. 273, 100 S.E. 418 (1919); *Cincinnati Northern R. Co. v. Beveridge*, 8 F.2d 372 (D.C.Va.1925); *United States v. Mason & Dixon Lines*, 222 F.2d 646 (6th Cir. 1955); *Southern Pacific Co. v. Valley Frosted Foods*, 178 Pa.Super. 217, 116 A.2d 70 (1955); *Griffin Grocery Co. v. Pennsylvania Railroad Co.*, 93 Ga.App. 546, 92 S.E.2d 254 (1956); and *Airborne Freight Corp. v. Irving Trust Co.*, 26 A.D.2d 507, 275 N.Y.S.2d 863 (1966). These cases were frequently referred to as representing the minority view. *Griffin Grocery Co. v. Pennsylvania Railroad Co., supra; Atlantic Coast Line R. Co. v. Wannamaker Chemical Co., supra; Southern Pacific Co. v. United States, supra; Pennsylvania R. Co. v. L. N. White & Co., supra.*

More recent cases, however, have taken a decided swing in favor of the *Davis* view. Thus in 1969 the 3rd Circuit joined in the 6th Circuit's position in *Missouri Pacific Railroad Co. v. National Milling Co.*, 276 F.Supp. 367, aff'd 409 F.2d 882. Then in 1971, the 7th Circuit joined the 3rd and 6th Circuits and disagreed with the 8th Circuit. *Consolidated Freightways Corp. of Del. v. Admiral Corp.*, 442 F.2d 56. Soon afterwards the 8th Circuit itself, in *Southern Pacific Transportation Co. v. Campbell Soup Co.*, 455 F.2d 1219 (1972), permitted a

defense of estoppel in this situation, failing to follow its own previous *Central Warehouse* decision and instead cited the *Davis, Consolidated Freightways* and *National Milling Co.* decisions with approval. Following these decisions by the 3rd, 7th and 8th Circuits, a host of state cases joined in recognizing the new majority rule, including the following: *Tom Hicks Trans. Co. v. Ford, Bacon & Davis Texas Inc.*, 482 S.W.2d 364 (Tex.Civ.App.1972); *Lyon Van Lines, Inc. v. Cole*, 9 Wash.App. 382, 512 P.2d 1108 (1973); *Aero Mayflower Transit Co. v. Harbin*, 126 Ga.App. 72, 190 S.E.2d 91 (1972); *Consolidated Freightways Corp. of Del. v. Eddy*, 266 Or. 385, 513 P.2d 1161 (banc 1973); *Penbrook Hauling Co., Inc. v. Sovereign Const. Co., Ltd.*, 128 N.J.Super. 179, 319 A.2d 277 (1974), aff'd 136 N.J.Super. 395, 346 A.2d 433 (1975); *Aero Mayflower Transit Co. v. Hofberger*, 532 S.W.2d 759 (Ark.1976). These cases last mentioned quite clearly now state the prevailing rule which governs interstate shipment and which does permit a consignee to rely on estoppel in a case of this sort where the carrier has marked the freight bill prepaid and the consignee has paid the full freight charge to the consignor in reliance upon that representation.

▆▆▆▆ Defendant seeks to distinguish these cases by arguing that the stipulation contains nothing to show that defendant did pay the freight charges to the consignor. It is quite true that the stipulation does not state that any part of the payments from defendant to United Consumer was separately identified and designated as a payment of the freight charges. However, the stipulation does say that defendant received payment for the merchandise from United Consumer's customers and "remitted the funds so collected, less its own charges and expenses." As a matter of economic necessity, the price for the merchandise charged by United Consumer to its customers had to include all elements of cost, including the cost of freight. When the stipulation states that defendant received "payment" from those customers, that compels the implication that the price so charged and received included as an ele-

ment the freight due, and the remittance by defendant likewise constituted a remittance of the freight charges. No case has been found which has denied the defense of estoppel simply because the remittance by the consignee failed to segregate and separately identify the freight charge from the balance of the payment. To the contrary, such separate identification obviously would have no importance under the decision in *Lyon Van Lines, Inc. v. Cole, supra,* and its unmateriality seems to be reflected in *Griffin Grocery Co. v. Pennsylvania Railroad Co., supra.*

Another possible distinction not directly articulated by defendant but which may be implicit in its argument would be that defendant did not advance its own money in making remittances to United Consumer, but rather as a commission merchant merely transmitted funds received by it from United Consumer's customers. Such a purported distinction might find some minimal support in the language of *Missouri Pacific Railroad Co. v. National Milling Co., supra,* 276 F.Supp. at page 372, distinguishing *Central Warehouse,* and arguably from what appears to be the distinguishing of the *Central Warehouse* decision in *Campbell Soup* (the basis for that distinction not being explained in the *Campbell Soup* opinion). However, any distinction on this ground must be deemed specious. Little realistic difference can be seen for the purpose of this case between defendant selling United Consumer's merchandise on commission and remitting collections; as against defendant buying the merchandise outright, selling to its own customers, and after collecting payment on its own sales, making remittance of its purchase price to United Consumer. In either situation, defendant would be equally damaged. Just as would be the case if it had made sales to its own customers, so also here defendant could have protected itself, if it had not been misled by plaintiff, by simply withholding the amount of the freight charge from the remittances to United Consumer. Moreover, the defense of estoppel was permitted by a commission merchant in precisely these same circumstances in *Cincinnati Northern*

*R. Co. v. Beveridge, supra,* and it was permitted under analogous circumstances in *Southern Ry. Co. v. W. A. Simpkins, Co., supra.*

Defendant cites as denying the defense of estoppel the decision of the St. Louis Court of Appeals in *Long Island R. Co. v. Midland Valley Lumber Co.,* 237 Mo.App. 147, 164 S.W.2d 930 (1942). That case involved suit against a consignor, not a consignee, and the denial of the claim of estoppel arose under facts completely dissimilar to those here. In any event, the decision in the *Long Island R. Co.* case antedated the more recent federal decisions on this subject and anything said in that opinion does not reflect the currently prevailing federal rule; accordingly, that case is not binding nor persuasive. *Penbrook Hauling Co., Inc. v. Sovereign Const. Co., Ltd., supra.*

The judgment of the circuit court is reversed and the case is remanded with instructions to enter judgment for defendant.

All concur.