SCHOONOVER, Judge.
The appellant, Southern Auto Sound, Inc. (Southern), appeals a final judgment in favor of appellee, Consolidated Freightways, Inc. (Consolidated). We reverse.
The instant dispute arose out of Southern’s purchase of merchandise from two of its suppliers, Altus Corporation and Spec II Corporation. Both suppliers engaged Consolidated, a freight forwarder, to transport merchandise purchased by Southern to the destinations designated by Southern on the purchase orders issued at the time of the purchase. Each shipment was accompanied by a freight bill provided by Consolidated which indicated that the freight *1086 charges had been prepaid. Although the freight bills indicated that the transportation costs had been prepaid, Consolidated had not actually collected the costs in advance. Instead, Consolidated had extended credit to both suppliers without informing Southern. Upon the suppliers notifying Consolidated that they were becoming insolvent and could not pay their bills in total, Consolidated settled with the suppliers for a percentage of the amount due and released the suppliers from any further liability, again without informing Southern.
After Southern refused Consolidated’s demand for payment of the balance due on the suppliers’ accounts, Consolidated filed a two count complaint seeking judgment against Southern for the difference between the amount of the freight bills and the amount paid by the suppliers. Southern answered the complaint and, among other things, raised estoppel as an affirmative defense. In support of this defense, Southern alleged that Consolidated had delivered the goods marked prepaid, that Southern had paid the suppliers in reliance upon that notation, and that Consolidated, therefore, was estopped from requiring Southern to pay twice for the same shipments of goods.
Evidence presented at a nonjury trial established that Consolidated furnished its customers blank freight bills bearing Consolidated’s name. When a shipper desired to use Consolidated to transport merchandise, the shipper would fill in the necessary information and then indicate in a space provided whether the merchandise was to be shipped prepaid or collect. The parties stipulated that all bills in dispute were marked prepaid by the two suppliers at the time the shipments were delivered to Consolidated for transportation to Southern. Although Consolidated's air freight tariff and the bills allowed for the extension of credit for a period of seven days from the date of billing, Southern was not notified that credit had in fact been extended to the suppliers or that, after the seven days mentioned on the bills, Consolidated had not been paid by the suppliers. Southern’s standard procedure when merchandise was received was to process the suppliers' invoices, which included a freight charge, and to pay the invoices within thirty days if the bills that accompanied the shipment indicated that the freight charges had been prepaid. Southern, therefore, paid these two suppliers in reliance upon the representation that the freight charges had been prepaid. By the time Consolidated notified Southern of its claim against Southern, several months had elapsed from the time of the suppliers’ last shipment to Southern. Southern, consequently, did not owe either of the suppliers any money from which it could have claimed an offset for the freight charges.
At the conclusion of the trial, the court found that Southern had not proved the defense of estoppel and entered a judgment for Consolidated. This timely appeal followed.
Southern does not contend that a consignee of goods cannot be held jointly and severally liable with a consignor for freight charges under the common law or, in this case, under Consolidated’s air freight tariff which provided for joint and several liability. Southern does contend, however, that because of Consolidated’s conduct in this case, Consolidated should be estopped from making Southern pay twice for the same freight charges. We agree.
Southern purchased merchandise from Altus and Spec II with the understanding that those companies would initially pay transportation charges and that Southern would then reimburse them. Southern accepted delivery of the merchandise upon the representation on the attached freight bills that the suppliers had in fact fulfilled their obligation to prepay freight charges. By presenting freight bills containing that representation and by not demanding payment at the time of delivery, Consolidated invited Southern to discharge its obligation to reimburse the suppliers for freight charges which Southern believed the suppliers had already paid. Furthermore, Consolidated put Southern in a position of not being able to protect itself from possible liability for double payments by extending credit to the suppliers and then failing to notify Southern either of the extension of *1087 credit or of the deficiency in payment until several months after the last shipment had been received and after Southern had paid all of the freight charges directly to the suppliers.
In a factually similar case, Consolidated Freightways Corp. v. Admiral Corp., 442 F.2d 56 (7th Cir.1971), the court held that the carrier was estopped from collecting payment from the consignee. In Admiral, the court held that the carrier’s credit practices of letting charges accumulate beyond the allowable time for such credit contributed to the gravity of the carrier’s losses and effectively prevented the consignee of the goods from protecting itself by'misrepresentations of prepayment and the failure to notify the consignee. Here, Southern relied, as did the consignee in Admiral, upon the misrepresentation that the freight had been prepaid and paid the freight charges directly to the suppliers without having the opportunity to protect itself because of Consolidated’s credit practices. Accordingly, we find, as did the court in Admiral, that because of the conduct of the carrier, Consolidated, Consolidated is estopped from requiring the consignee, Southern, to pay the same freight charges twice.
The cases relied upon by Consolidated in its attempt to distinguish the Admiral holding are inapplicable because those cases deal with the court’s refusal to apply estoppel when rate or credit discrimination is involved.[1] See, e.g., Missouri Pacific R.R. v. Rutledge Oil Co., 669 F.2d 557 (8th Cir.1982). Here, there is no rate or credit discrimination involved.
Consolidated also contends that the Supreme Court was trying to limit the holding of Admiral in Southern Pacific Transportation Co. v. Commercial Metals Co., 456 U.S. 336, 102 S.Ct. 1815, 72 L.Ed.2d 114 (1982). We disagree.
In Southern Pacific, the Court distinguished Admiral on the basis that Southern Pacific only involved improper credit extensions whereas, in Admiral, improper credit extensions only added to the problem of the carrier’s misrepresentation. In further distinguishing Admiral, the Southern Pacific Court indicated that where credit or rate discrimination is not involved, estoppel may be properly applied in those cases where the carrier makes a material misrepresentation regarding prepayment, the consignee pays the consignor the full freight charges and does so in detrimental reliance on the carrier’s representations, and the consignee had no means by which to protect itself from freight charge liability.
Consolidated contends that these elements are not present in this case because (1) the consignors of the freight, not Consolidated, made the misrepresentation, (2) Southern did not establish that it paid all of the freight charges to the suppliers, and (3) Southern had no right to rely on the misrepresentations because one of Southern’s officers was also active in one of the supplier companies. We disagree.
First, Consolidated must be held responsible for the misrepresentations because, although the suppliers and not Consolidated marked the bills prepaid, Consolidated knew the bills were marked prepaid and yet delivered the bills so marked without demanding payment as required by Consolidated’s tariff when the freight was not prepaid. Secondly, although Southern’s representative was not able to identify each payment made to the suppliers because of the age of the transactions, testimony of Southern’s custom and practice established that the bills had been paid. There was no evidence to dispute this testimony. Finally, although one of Southern’s officers was an investor in one of the supplier companies, testimony established that the officer did not exercise any control over the operation of the supplier corporation, and there was no evidence that the dealings between the two companies in connection with this dispute were other than arm’s length.
*1088 We, accordingly, find that the court should have found that Consolidated was estopped from requiring Southern to pay freight charges twice. We, therefore, reverse the judgment entered in favor of Consolidated and remand for entry of a judgment in favor of Southern.
Reversed and remanded.
CAMPBELL*, A.C.J., and THREADGILL, J., concur.

. See Interstate Motor Freight Systems, Inc. v. Wright Brokerage Co., 539 S.W.2d 764 (Mo.Ct.App.1976), for a discussion of the history and factors which affect judicial application of es-toppel to carriers in actions against consignors and consignees for freight charges.